M. D. SAUCIER *v.* STATE.

[59 South. 858.]

1. CRIMINAL LAW. *Forgery. Instruments subject to forgery. Warrant on county treasury. Indorsement. Instructions. Misconduct of district attorney. Improper cross-examination of accused. Harmless error.*

A county warrant, based upon a regular allowance of the board of supervisors, in accordance with a general statute, properly drawn with all necessary information upon its face, and properly signed and apparently complete and payable to a named payee or bearer, is the subject of forgery.

2. SAME.

Forgery may be committed of any writing, which if genuine would operate as the foundation of another man's liability or the evidence of his right.

3. FORGERY. *Warrant on county treasury. Indorsement.*

A fraudulent indorsement of the name of the payee on the back of a county warrant, made payable to the payee or bearer, is not a harmless operation but is forgery, since by the indorsement the holder could look both to the county and the payee for payment of the amount of the warrant.

4. CRIMINAL LAW. *Instructions. Hypothesis of innocence.*

An instruction that if there were two hypotheses of the case in the minds of the jury, one that the defendant is innocent and the other of his guilt, the jury should adopt the one of

innocence, even though the other is supported by greater evidence, was properly refused.

5. WITNESS. *Misconduct of district attorney. Cross-examination of accused.*

It was improper for the district attorney on cross-examination of accused on trial for forgery to ask him whether it was not a fact that he was charged in an indictment here of forgery, and uttering forged deeds and other county warrants and that you were run out of the parish in which you were born and raised on account of land over there.

6. SAME.

But where the guilt of the defendant is clearly established and the jury refused to accept the explanation of the accused and the court gave proper instructions and the trial was otherwise fairly conducted, the court will not reverse the case for such improper questions by the district attorney.

APPEAL from the circuit court of Jackson county.

HON. T. H. BARRETT, Judge.

M. D. Saucier was convicted of uttering a forged instrument and appeals.

The facts are fully stated in the opinion of the court.

*Jas. H. Neville,* for appellant.

This warrant required no indorsement, and the indorsement or writing of the name of Charles Lee on the back of the warrant added no force or validity to the same . It created no legal liability, and could not have aided in defrauding any one. To constitute the crime of forgery, it is essential that three things should exist; first, there must be false making or other alteration of some instrument in writing, there must be a fraudulent intent, and the instrument must be apparently capable of effecting a fraud. 19 Cyc. 1373.

This warrant was issued by the board of supervisors of Jackson county, subject to all the conditions which surrounded the issuing of county warrants. One condition in the issuance of a county warrant was that it should be payable to bearer, and this warrant would have

been paid by the county treasurer, if all other requirements of law had been availed of, by any person presenting the same to him, and that without reference to whose name was written upon the back of it. The mere writing of the name of Charles Lee on the back of the warrant gave it no more legal force, no more effect than it had before. It matters not if Mr. Lee's name was written on the back of the warrant, and after his name, dozens of others, when the warrant was presented to the county treasurer, he was required to pay the same to the bearer in the order of its registration unless there was sufficient funds in the treasury to pay all registered warrants. The Pascagoula National Bank, when it cashed this warrant, knew that the county treasurer would be required to pay the warrant to the bank when presented, and knew also that the warrant would be paid only in the order of its registration, unless there was sufficient funds in the county treasury to pay all the registered warrants in the county, and therefore, the writing of the name of Charles Lee and the name of Saucier on the back of the warrant added nothing to its force and was the merest surplusage, and therefore and of course the writing of that which is mere surplusage upon the back of a paper is not forgery, and cannot be forgery; we are now discussing the criminal, and not the civil, liability of parties.

How could the writing of the name of Charles Lee on the back of this warrant defraud the Pascagoula National Bank? The bank knew the force and value of the warrant; knew that it was unnecessary for Mr. Lee's name to appear on the back of the warrant, and knew that the writing of his name thereon would not add to the force or legal liability of the paper, but undertook, indeed knew, that with the warrant in its hands, it could go to the treasurer of the county and demand the payment thereof without reference to Lee's name, and without reference to Saucier's name, and that the county

treasurer would be compelled under the law to pay the same at once if there was sufficient funds in the county treasury to pay all warrants registered against the county; otherwise that it would be the duty of the treasurer to pay it in the order of its registration. There was no possible way by which the bank could be defrauded, and if it were impossible to defraud the bank by the manner in which the paper was to be handled, then the appellant could not be convicted of an intent to defraud. He could not be convicted of defrauding because it was impossible under the circumstances to defraud, and therefore he could not be convicted of the intent. We submit that the paper is not one upon which forgery can be predicated, and that therefore, on these grounds, the demurrer should have been sustained. 2 Bishop's Criminal Law, sections 570 and 573.

The writing of the name of Charles Lee on the back of this warrant was, to say the most of it, a mere harmless alteration, and is not therefore forgery.

*Denny & Denny,* for appellant.

In *France* v. *State,* 83 Miss. 281, 35 So. 313, it is declared that "to authorize an indictment for forgery, the instrument must either appear on its face to be, or be in fact, one which, if true, would possess some legal validity; or, in other words, must be legally capable of effecting a fraud."

We respectfully insist that the sixth and seventh grounds of demurrer are well taken. The warrant, as set out in the indictment, was payable to Chas. Lee, or bearer, but there is no allegation that its transfer could be effected only by indorsement, or that indorsement thereof by Chas. Lee was essential to its transfer or negotiability. That such allegation was necessary is evident in view of what all the courts have held in reference to immaterial alterations of or additions to instruments of writing on which a charge of forgery is based.

If such indorsement was not necessary to a valid transfer of the warrant, then the writing of the name of Chas.
Lee on the back of it by the party selling it to appellant
was not a forgery, because of the immateriality of such
indorsement, as such, if genuine, would neither add to
or take from the validity of the warrant, and consequently, such act could not be a forgery; nor could the
act of appellant in presenting the warrant and collecting
the face value thereof be held to be uttering a forgery.
The warrant payable to Chas. Lee, or bearer, was transferable by mere delivery; the holder, appellant here,
claimed and held title thereto as bearer, and the indorsement of Chas. Lee was not essential to enable the bearer
to collect or bring suit upon the warrant. The only effect an indorsement of such paper could have would be
to render him liable to a subsequent bearer or holder.
The circumstance of making the warrant payable to Chas.
Lee, or bearer, did not compel the holder to show an indorsement by Lee, since it was payable in the alternative, and not to Lee absolutely. It was transferable by
mere delivery. This theory or rule of law is supported
by *Tillman et al.* v. *Ailles,* 5 S. & M. 373. Again in *Hathcock et al.* v. *Owen et al.,* 44 Miss. 799, it is held that a
note "payable to B. F. Owen, or bearer," is negotiable
by delivery. A transfer in that mode is an order to the
makers to pay the holder, and invests the holder thus acquiring the possession with the complete legal title.
Again in *Hart* v. *Taylor,* 70 Miss. 655, 12 So. 553, quoting with approval *Craig* v. *Vicksburg,* 31 Miss. 216, it is
held that bonds, or other sealed instruments, as well as
bills, notes, etc., are transferable, when made payable
to bearer, by mere delivery. So, under such authority,
we assert with positiveness, that the name of Chas. Lee
on the back of said warrant did not, in any manner,
affect the warrant of title thereto, or negotiability thereof. Besides, it is a matter of common knowledge and
universal practice, that such warrants are transferable,

or collected, without indorsement. There is no statutory
requirement of such indorsement, and no rule or custom
therefor. It, therefore, necessarily follows that the un-
authorized writing of the name of Chas. Lee on the back
of the warrant by some unknown holder thereof, and the
uttering of it by appellant could not be the subject of
forgery, or of the crime of uttering a forgery. This is
true for the reason that such, if genuine, would have
been of no legal efficacy. It is simply a harmless act and
one that could not materially affect the warrant, or its
negotiability. Indorsements of such character, to be the
subject of forgery, must be of something which, if genu-
ine, would be of legal efficacy. The legal liability and the
benefit, or property therein was in no sense altered, but
remained unchanged. It was a nullity and a harmless ad-
dition to the warrant. Such is the doctrine declared in
2 Bish. Cr. Law, sections 570-573. In Cyc. 1379, is the
statement: ''The third element of forgery is that the
writing shall possess some apparent legal efficacy, be-
cause otherwise it would have no tendency to defraud;
or, in other words, the writing must be one which, if
genuine, might injure another. This proposition is so
obvious that the mere statement thereof proves it.'' So,
here, if the indorsement was not essential to negotia-
bility of the warrant, it could not affect anyone injur-
iously, because it was payable to bearer and subject to
transfer by delivery without indorsement.

The law of forgery, and uttering a forgery, which we
are here awkwardly endeavoring to elucidate and apply
to the case at bar, is laid down with extraordinary force
and clearness in *Wilson* v. *State,* 85 Miss. 687, 38 So. 46,
where in a draft for ''two and 50-100 dollars'' as writ-
ten out in the body of it, and in the corner thereof the
figures $2.50/100, Wilson put the figure ''1'' before the
figure ''2'' in the corner, making those immaterial fig-
ures $12.50 instead of $2.50, and undertook to negotiate
it as $12.50, the court held: ''This was not a forgery,

because it was an immaterial part of the paper, and because it could not possibly have injured anybody. In order to constitute the crime, there must not only be the intent to commit it, but also an act of alteration done to a material part, so that injury might result." And inasmuch as forgery could not be predicated of such immaterial act, the court further held that a conviction of an attempt to commit forgery could not be sustained. And we submit that, on the same ground of reasoning, the appellant here could not be lawfully convicted of forgery, or of uttering a forgery.

The case of *Cox* v. *State*, 66 Miss. 14, 5 So. 618, where Cox changed the date of a tax receipt from that of December, 1886 to December, 1887, for the purpose of making it appear that he had paid the taxes of 1887, but on the face of the receipt it appeared that it was given for the year 1886. The court held that such alteration was immaterial and, consequently not the subject of forgery.

Here the indictment shows on its face that the warrant was payable to bearer and the name of Chas. Lee written on back of the warrant, which, as we have attempted to show, and as the court judicially knows, was an unnecessary act and not essential to the negotiability, or the validity, of the warrant, and could not be the subject of forgery, or uttering a forgery, therefore the indictment was insufficient.

If we are correct in what is above set forth, it necessarily follows that the last ground of demurrer, broadly alleging that the indictment charges no offense known to the law, is well taken.

*E. J. Ford,* district attorney, for the state.

Forgery and its kindred crime, uttering of forgery, is predicable of any false or spurious instrument of writing, which, if valid, would be the foundation of another's right or liability. In this case, it is sought to have this court declare that forgery is not predicable of a county

warrant, and not only that, but also to hold that an instrument capable of defrauding and which is shown by the record to have defrauded a national bank and deceived said bank, is not the subject of forgery nor of being uttered when forged.

We have in this case therefore as the gist of the inquiry, as appears from appellant's counsel's brief, a county warrant having every appearance of regularity and validity on its face. In presenting this matter to the court, numerous cases are cited by counsel to show that where an instrument is incomplete on its face, the indictment must allege extrinsic matter or facts to show its efficacy, or to complete it. These cases, I conceive, are inapplicable to this inquiry for the reason that we are now dealing with a complete instrument. What was lacking on the face of this warrant to complete and validate it? A regular allowance of the board of supervisors of Jackson county attested by the clerk of that board, with citation to the book and page of the allowance, and bearing the seal of the county, an instrument which spoke for itself, negotiable and receivable wherever the credit of Jackson county is known. It recites that it was for bounty to Charles Lee. Would not a purchaser of the warrant from Charles Lee have a right to believe, because *omnia rite acta praesumuntur,* that the board had made a proper allowance with proper authority, that the board had passed an ordinance touching fish and game, if any were needed indeed. The case cited by counsel on this point are inapplicable, I conceive, for the further reason that they deal with offenses which are not offenses under the law unless certain local conditions exist. Here, they simply undertake to go behind the record and impeach the warrant on some technicality which is not a part of its life or vigor.

It is further urged both on demurrer to the indictment and in argument upon the facts of the case that the indorsement of Lee's name on the back of the warrant

was an immaterial alteration, as the warrant was paya-
ble to Lee or bearer, and consequently such alteration
could not be the foundation of the present charge. It is
respectfully submitted that such an argument must surely
arise from the misconception of the law of negotiable in-
struments and the principles of law affecting forgery
of such instruments. Surely, it may be that appellant
might have obtained the payment of the warrant from
some one without the indorsement of Lee's name, but the
name of Lee having been indorsed on the back, the war-
rant became a different instrument. Thereafter, a holder
of the warrant could rely not only upon the solvency of
Jackson county, but also upon that of Lee. By this in-
dorsement Lee also became a new contract, and the bank
who cashed the warrant could look to Lee as well as to
the county. In view of these considerations, how could
there have been a more material alteration of the war-
rant? If any authority is needed on the question of
whether or not an indorsement of an instrument is the
proper subject of forgery, it may be found in 19 Cyc.
1386, section 7. Also section 1198 of the Code of 1906
provides that the forging of a signature may be the sub-
ject of forgery. Section 1199 of the same Code makes
the alteration of a county warrant forgery. In support
of their view in this matter, counsel cite the case of
*Wilson* v. *State,* 85 Miss. 687, but it is respectfully sub-
mitted that said case does not support their contention
here. In that case the alteration in the figures of a draft
was made, but the writing of the amount of the draft
was not changed. The court therefore held very prop-
erly that the draft as a matter of fact had not been so
altered as to change its effect in law, because of the well-
known rule that where the figures and the writing con-
flict, the latter must prevail. Likewise the case of *Poyth-
ress* v. *State,* 56 So. 168, cited by counsel, does not sup-
port their contention, for the reason that in that case the
alleged forged matter was incomplete and legally of no

effect, in that the attestation of the chancery clerk did not purport to be present, without which the entry of satisfaction of the trust deed was inoperative. In the instant case we have an instrument already perfect being altered so as to give it further apparent worth and value by the addition of another guarantor of the paper.

*Claude Clayton,* assistant attorney-general, for the state.

This brings into consideration whether or not appellant would be liable in indorsing a negotiable instrument, the transfer of which was effected by delivery only, if he wrote his name on the back thereof. I will admit, for the sake of argument, that the warrant did not require that its legal owner should indorse it in order to effect a legal transfer thereof; but, I understand the rule to be that in such cases, where the transfer can be made by delivery only if the person making such transfer writes his name upon the back of the negotiable instrument, he can be held liable for its payment, and such action upon his part is a matter about which he cannot be excused if his actions have been contrary to the criminal law. The indorsement under such circumstances is material, and the indorser is liable therefor. This principle has been decided by our supreme court in the identical case relied upon by counsel for appellant which is *Tillman* v. *Ailee?,* 5 S. & M. 373. In that case, the court speaking through Mr. Justice Thatcher, used the following significant language:

"The note in this instance was negotiable and transferable without indorsement; nevertheless if the defendant indorsed it, he made himself liable on his indorsement."

Therefore, the indorsement by appellant, if done by him was not an immaterial action upon his part, and is sufficiently alleged in the indictment as to make him liable therefor.

Argued orally by *J. H. Neville,* for appellant, and *Claude Clayton,* assistant attorney-general, for the state.

Reed, J., delivered the opinion of the court.

Appellant was indicted for the forgery of a county warrant. The indictment includes two counts, one charging forgery of the warrant, and the other the uttering of the forged paper. A demurrer was interposed to the indictment, and was overruled by the court. The court ordered the district attorney to elect upon which count appellant would be tried, and he selected the second count, which charged the uttering of the forged paper.

A warrant on the treasurer of Jackson county was drawn through an order of the board of supervisors of that county by the clerk of the board for five dollars and fifty cents, payable to Charles Lee, or bearer, and payable out of the forest and game fund of that county. This order, with others, was in a warrant book, which was allowed to lie on the desk in the office of the chancery clerk. Appellant was an abstracter in Jackson county, and a daily and frequent visitor to the chancery clerk's office. The warrant book disappeared, and has never been found. Among the warrants in the book at the time of its disappearance was the one payable to Charles Lee. Some time after the loss of the warrant book, and in September, 1910, appellant presented to the Pascagoula National Bank three county warrants, the one above mentioned in favor of Charles Lee for five dollars and fifty cents, one payable to John Parker for five dollars and one payable to C. R. Gibson for ten dollars. All were indorsed, apparently, by the parties to whom they were payable, and all were warrants to be paid out of the forest and game fund. Upon request of the bank, appellant indorsed his own name on the warrants, and the bank paid him the amount of the same. It appears that the warrants in favor of C. R. Gibson and John Parker were in the warrant book when it disappeared from the chancery clerk's

102 Miss.—42

office. Later Charles Lee called at the clerk's office for
his warrant. Information had been received that the
three warrants named had been paid by the treasurer of
the county, and that the last indorser on the warrants
was appellant. Upon Mr. Lee telling appellant that he
had never disposed of the warrant in his favor, apel-
lant refunded him the amount. Mr. Lee testifies that ap-
pellant stated that he would pay him the money if he
would say nothing about it. Appellant explains his pos-
session of the warrants by the statement that he pur-
chased them from a colored man named Lee, who came
to him on the streets after the hour when the banks had
closed with the three county warrants named, and that
he paid sixteen dollars therefor. He testifies that he
has never seen the man who sold him the warrants since,
and he does not know where he is. He understood that
he lived somewhere in the country, and he also states
that he kept the warrants some time, perhaps a couple
of weeks, before he cashed them. It appears from the
testimony that after the demurrer, which was filed to the
indictment, was overruled, and the case was set to be
tried the next day, appellant fled from the state, and was
not apprehended until some time later, when he was ar-
rested in San Antonio, Texas, and brought back to Jack-
son county.

It is contended that the warrant in this case was not
valid, and therefore not the subject of forgery. The war-
rant is based upon a regular allowance of the board of
supervisors, in accordance with a general statute. It is
properly drawn, with all necessary information upon its
face, and properly signed. It is an instrument appar-
ently complete, and from its use, as shown by the testi-
mony, was negotiable, and a sufficient claim against Jack-
son county. It was surely an evidence of the right of
Charles Lee, the payee ,to collect from Jackson county
the sum of five dollars and fifty cents. It was not void
on its face, nor meaningless, nor indefinite, because it

contained all necessary information as to its purposes, and was properly drawn and signed. It surely possessed apparent legal efficacy. It was the subject of forgery. 19 Cyc. 1380. "Forgery may be committed of any writing which, if genuine, would operate as the foundation of another man's liability or the evidence of his right." *In re Tully* (C. C.), 20 Fed. 812.

It is also contended that the writing of the name of Charles Lee, the payee, on the back of the warrant, was a harmless alteration, and is not, therefore, forgery. Under the law of negotiable instruments, when the payee's name is indorsed on the back, he becomes liable to the holder for the payment of the paper he indorses. In the present case, after the indorsement of the payee's name, the holder could look to both Jackson county and Charles Lee for the payment of the amount of the warrant. By reason of such indorsement the value of the warrant was increased to the extent of the solvency of Charles Lee, the payee. "It is well settled that making a false indorsement of the name of the payee of an instrument, or one of the payees, or of the maker, if payable to maker's order, is forgery." 19 Cyc. 1386.

It is claimed in the briefs of counsel for appellant that the court erred in refusing to give two instructions offered, whereby the jury were told that if there were two hypotheses of the case in the minds of the jury, one that the defendant is innocent, and the other of his guilt, the jury should adopt the one of innocence, even though the other is supported by greater evidence. Counsel cite the case of *Thompson* v. *State*, 83 Miss. 289, 35 South. 689, to sustain their contention. The court did not err in refusing to give these instructions. See *Runnells* v. *State*, 96 Miss. 92, 50 South. 499; *Roux* v. *City of Gulfport*, 97 Miss. 559, 52 South. 485.

Another assignment of error is based upon two questions asked the appellant by the district attorney on cross-examination: (1) The following question: "Isn't

it a fact that you are also charged in ten indictments here of forgery and uttering forgery of deeds and other county warrants?" The district attorney justifies his asking this question by the explanation that another witness had testified relative to the ten indictments. The other question complained of is: "Isn't it a fact that you were run out of the Louisiana parish where you were born and raised on account of transactions regarding land over there?" In view of the general fair trial of this case, and the full presentation of all the evidence to the jury, and the clear instructions given for both the state and appellant, we do not consider this prejudicial to the interests of appellant, nor that it interfered with his having a fair and impartial trial, to the extent of it being reversible error. However, we deem it proper, and the duty of this court, to express with all seriousness and emphasis our disapproval of the practice of prosecuting attorneys in asking such incompetent questions as those stated above. It should be the duty of this officer of the state, who exercises a most important function in the enforcement of the criminal laws, to see that every man who is brought to the bar of justice has a fair and impartial trial; and he should never do anything to bring a person charged with a crime, no matter how great may be his guilt, into disrepute by the asking of an incompetent question, or seeking to introduce before the jury incompetent evidence, which may tend to reflect upon his character. From the ability of the prosecuting attorney in this case, and his general fairness in the conduct of the case, we are led to believe that he forgot for a moment his important office, and the dignity and responsibilities of his position as prosecuting attorney, when he asked the questions.

The evidence clearly establishes the forgery alleged in this case. The jury refused to accept the explanation of the appellant of his obtaining possession of the paper. In fact, the jury was convinced that the appellant was guilty of uttering the forgery as charged, and we, after

a careful consideration of all of the record, have reached the same conclusion. Therefore we cannot decide that appellant has been deprived of a fair and impartial trial by the impropriety of the district attorney in asking the incompetent questions.

*Affirmed.*