# COWARD *v.* STATE.

No. 39610 March 21, 1955 78 So. 2d 605

*Barnett, Jones & Montgomery; Satterfield, Ewing, Williams & Shell, Hayes Callicutt*, Jackson, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Louie E. Coward, Jr., was convicted in the Circuit Court of Leflore County of the crime of uttering and publishing as true, with intent to defraud, a forged and counterfeit check, knowing such instrument to be forged. Miss. Code 1942, Sec. 2179.

In October 1952 Coward was in the refrigeration appliance business in the City of Greenwood, Leflore County, Mississippi. His father was operating a similar type of business in the City of Jackson. In the latter part of October or early in November 1952 appellant deposited in the Leflore Bank and Trust Company of Greenwood

a check dated October 24, 1952, drawn on the Citizens and Southern National Bank of Eastport, Georgia, payable to the order of Louie Coward Company, which was the name of appellant's business, in the sum of $1,757.38, and signed by M. M. Chambley, "Special Acct." Appellant testified that this was a check from Mrs. M. M. Chambley in full payment for the purchase price of a meat case and a reach-in refrigerator. He admitted that within a day or two the bank called him and advised that they had the check and that "payment had been cancelled on it." However, he explained this by saying that Mrs. Chambley had previously telephoned him at his office and had cancelled the order for the equipment because of delay in delivery. He refused to admit or deny that the president of the Leflore Bank and Trust Company told him that this check had been dishonored, because "I simply don't know."

On December 15, 1952, appellant deposited in the Bank of Commerce at Greenwood a check drawn on the Citizens and Southern National Bank, Atlanta, Georgia, payable to Louie Coward Company, in the amount of $574.19, and signed "Mrs. M. M. Chambley."

Two days thereafter, and on December 17, 1952, appellant deposited in the Bank of Commerce at Greenwood a check dated December 10, 1952, drawn on the Citizens and Southern National Bank, Atlanta, Georgia, in the amount of $746.54, payable to Louie Coward Company, and signed "Mrs. M. M. Chambley." This is the check upon which the indictment is based. It recited thereon "R-40 Warren Reach-In In full." It was endorsed, "For Deposit Only Louie Coward Company."

On December 22 the first check depoisted in the Bank of Commerce on December 15, in the amount of $574.19, signed "Mrs. M. M. Chambley" was dishonored by the drawee bank because there was no such account there, and was returned to the Bank of Commerce, of which J. H. Peebles is president. Peebles immediately telephoned appellant and advised him of that fact. Peebles

testified that appellant told him that "he thought that probably Mrs. Chambley had signed the check incorrectly," that she had inherited some money from a relative in Georgia, and she understood the check had been deposited to her account in the Atlanta Bank, but that she was uncertain as to the name in which the deposit had been made; and that he would procure from Mrs. Chambley another check properly signed to take its place. Peebles further testified that Coward told him that Mrs. Chambley had a plantation in the northeastern tip of Carroll County, that he had been making trips to see her, and his route was via Elliott on Highway 51, and that from Elliott he took a road going west, and after some several miles her place of business would be found on that highway. After this telephone conversation between Peebles and Coward, and on the afternoon of the same day, December 22, appellant deposited in the Bank of Commerce a third check in the amount of $574.19, dated December 22, 1952, drawn on the same bank in Atlanta, and signed by "Mrs. Ava Stead Chambley." This check recited "Cancels check $574.19 signed Mrs. M. M. Chambley." When appellant deposited the substitute check on December 22, Peebles surrendered to appellant the dishonored check of $574.19 which had been deposited on December 15. The bank then sent this check to the Atlanta bank by special delivery, and on December 24 the Atlanta bank sent a telegram to the Bank of Commerce in Greenwood that the check deposited December 22 was being returned unpaid, "no account." On December 26 the check in the amount of $746.54, which was deposited on December 17, was returned "dishonored," with the advice that the bank had no account in the drawer's name.

For several days thereafter Peebles was unable to locate appellant, but on December 29 or 30 he talked to him on the telephone, advising him that all three checks had been dishonored because there was no account in the drawer's name. Peebles testified that Coward then

told him that he would see Mrs. Chambley and repossess his merchandise, if he did not get his money; and that later Coward told Peebles that he had been to Mrs. Chambley's place, and that he and she had talked to her attorney in Atlanta by telephone, but that he was not satisfied that she had the money, and therefore he intended to repossess his equipment, Peebles said that later Coward reported that he had repossessed it.

Peebles made every effort to locate a Mrs. M. M. or Ava Stead Chambley, by writing letters addressed to such persons at pertinent post offices, all of which were returned unknown or unclaimed. He also made a personal search in the stated area of Carroll County and was unable to find any such person, or to find anyone who knew of the existence of any such person. The sheriff, a supervisor, and the county tax assessor of Carroll County, and a Mrs. John T. Chambley all testified that they knew of no such person as Mrs. M. M. or Ava Stead Chambley.

Appellant does not deny the fact that he deposited and uttered the check for which he was indicted, and the other checks set forth above. He contends that he did so in the regular course of business and in perfect good faith, without any knowledge that there was no such drawer. He denies that he told Peebles what Peebles testified that he told him, that he and Mrs. Chambley had talked to her attorney in Atlanta, that he had delivered the equipment to her, that he had visited her place, and later that he repossessed the equipment. Appellant testified that the merchandise was sold to Mrs. Chambley by Billy Perkins, who was a former employee of his father in Jackson. The following is a brief summary of appellant's defense: Early in November 1952 Perkins telephoned him and told him that he had a sale for a meat case and a reach-in refrigerator, and inquired about the commission appellant would be willing to pay him. Appellant agreed to pay Perkins 25 per cent of his profit, and to meet Perkins in Winona, where Perkins would

deliver to him the purchaser's check for the merchandise and he would deliver to Perkins his commission. Appellant cashed a check for the latter purpose at a Greenwood bank, and met Perkins in Winona, where he delivered to appellant the check of Mrs. M. M. Chambley for $1,757.38, and appellant paid Perkins his commission in cash. Appellant then ordered the equipment from the manufacturer, and while it was still on order, he said that Mrs. Chambley called him and cancelled the order because of the delay in delivery. Hence appellant said that he was not surprised when this first check was returned unpaid.

Appellant testified that he then went to Winona and told Perkins that he wanted a refund of the commission; that Perkins advised him that he thought he could get the order reinstated; that around December 10 or 12 Perkins telephoned him and told him that the order for the meat case had been reinstated, and asked appellant to prepare a check for $574.19, and meet him in Winona. Appellant did so, and Perkins then took the check out in the country and returned shortly thereafter with it signed by Mrs. Chambley. He said that he received his check in the ordinary course of business and in good faith, and so deposited it on December 15. The next afternoon Perkins told him that he had persuaded Mrs. Chambley to reinstate her order for the reach-in refrigerator, for $746.54, and asked appellant to prepare the check and meet him again in Winona. Appellant did so, and gave the check to Perkins to take to Mrs. Chambley for her signature. Perkins returned later that day with this check signed by Mrs. Chambley, and he deposited it in good faith. On December 22 when the first check was returned unpaid, appellant said that he remembered that Perkins had told him that Mrs. Chambley's account in Atlanta had been received by her from an inheritance, and that was the reason he thought that probably she had signed the wrong initials. So he drove to Winona, found Perkins, and told him of the check being returned unpaid. Appellant said that he suggest-

ed to Perkins that he go with him to see Mrs. Chambley, but that Perkins stated that this might cause her to refuse a new order. Perkins again went out alone in the country with the unsigned check, returned later with it signed "Mrs. Ava Stead Chambley," and appellant said that he then deposited this check in the Bank of Commerce on the same day in good faith.

Coward testified that since Mrs. Chambley had previously cancelled the order, and since he wanted to avoid this occurring again, he telephoned his father in Jackson and got him to agree to send the two items of merchandise up to Winona by truck. The next morning a truck driver named Chisolm drove the truck to the appointed place in Winona, where he was to wait for appellant. In the meantime appellant said that early that morning he searched all over the vicinity where Perkins told him Mrs. Chambley lived, trying to find her, but he could not locate her, so he paid the truck driver $35 and sent him back to Jackson. Appellant said that he then told the bank that he had been unable to locate Mrs. Chambley, and offered to pay the debt represented by these bad checks in installments, but the bank refused to permit this. Appellant's father corroborated his testimony about Perkins having previously worked for him, and about him sending the two items of equipment by truck to Winona. The truck driver, Chisolm, also testified about hauling the equipment to Winona, waiting for appellant, being paid by appellant $35 for the trip, and returning the equipment to Jackson. A. E. Crawford, a handwriting expert, testified that the signatures on the checks, "Mrs. M. M Chambley" and "Mrs. Ave Stead Chambley," were not made by appellant.

The elements of the crime with which appellant is charged, uttering a forged instrument, are (1) that the instrument is forged, (2) that it was uttered or published by defendant, (3) with intent to defraud, and (4) that appellant knew such instrument to be forged

at the time he uttered it. Appellant admits that he uttered and published the check in question by depositing it in the Bank of Commerce. The evidence was also ample to support the finding of the jury that it was a forged or counterfeit instrument. Appellant admits that he never saw Mrs. Chambley, although he claims that she telephoned him on the occasion when she allegedly cancelled the original order. ▮▮ ▮ The testimony for the State by Peebles, the sheriff, a member of the board of supervisors, a tax assessor, and a Mrs. John T. Chambley, to the effect that there was no such person by the alleged names living in Carroll County, was sufficient to support the finding of the jury that Mrs. M. M. Chambley or Mrs. Ava Stead Chambley is a nonexistent, fictitious person. Evidence that the name signed to an instrument is that of a fictitious person is admissible to prove that the instrument is a forgery. This would include testimony by persons so situated that they would probably know the signer if she existed, and they may testify that they do not know of any such person. Likewise, evidence as a result of inquiries is admissible to show the person's nonexistence. Kellum v. State, 213 Miss. 579, 582, 57 So. 2d 316 (1952).

Hence the only question in the case is whether there was sufficient evidence to warrant the jury in finding that at the time appellant uttered the check, he did so knowing that it was a forged instrument, with the intent to defraud. If the utterance was with knowledge of its forgery, the jury must necessarily have concluded that it was done with the intent to defraud. So the gist of the issue here is whether there is sufficient evidence to support the jury's finding of knowledge by appellant that the check was forged.

▮▮ We think that the jury was justified in concluding that appellant knew that the check was forged at the time he deposited it in the Bank of Commerce on December 17. A critical examination of all of the evidence supports the finding that appellant's version is

so improbable and unreasonable as to be unacceptable. According to Coward, his entire course of alleged dealings with Perkins is most unlikely, although it is possible that Perkins may have been an accomplice. Coward testified that he looked for Perkins after the events in question, but that he never could find him; that he found his former wife and his mother in Jackson, and that he also found his brother, although appellant forgot where the brother lived; and that Perkins "was said to work from Memphis south." The jury was warranted in considering that it was unlikely that anyone selling equipment of this type would deal solely through Perkins, delivering him checks in Winona, and Perkins alone taking them into the country for signature by the alleged Mrs. Chambley; that it was impossible that appellant did not know that Mrs. Chambley was a nonexistent person. Nor is it likely that a person would execute checks for substantial sums of money for payment of equipment before delivery by a man she had never seen. Appellant admitted that the original check in the amount of $1,757.38 was returned unpaid. It is almost incredible that appellant would make the numerous trips back and forth to Winona and would permit Perkins alone to see Mrs. Chambley and get her to sign the checks. The State proved that no Mrs. Chambley under the stated names had ever existed in Carroll County, and further proved by the vice president of the Atlanta Bank that no such person had ever had an account there. Furthermore, Peebles, President of the Bank of Commerce, testified, and the jury believed him, that when the first deposited check was returned dishonored and "no account," appellant told him that he had actually obtained the check from Mrs. Chambley, that he and she had talked with her attorney in Atlanta, that he had delivered the equipment to her, and unless she paid him, he would repossess the equipment. He further told Peebles later that he had repossessed the equipment. Accepting Peebles' testimony, which the jury did, it is inconceivable that appellant did not know

at the time he uttered the forgery that the check was false and that there was no such person as Mrs. Chambley. The element of (knowledge usually and necessarily is proved by circumstantial evidence. Appellant's entire course of admitted dealings, his testimony concerning Perkins, and the testimony of Peebles amply warranted the jury in finding that appellant knew the check was forged when he deposited it, and in concluding that Coward's tale was false. The fact that a handwriting expert testified that appellant did not sign the name of Mrs. Chambley to the check is only one item of evidence on the issue of knowledge, and, if true, simply excludes appellant as the person who physically signed the check. Appellant's evidence about his father sending the two items of equipment to Winona for delivery, and their return to Jackson, is a circumstance in appellant's favor, but the jury could well have concluded that appellant was in a difficult situation at the time this occurred, that he knew it, and that he was doing this to bolster his position. Examining all of these circumstances in the record, we conclude that the jury was warranted in finding that the appellant knew the check was a forgery when he deposited it.

 Appellant contends that the trial court erred in refusing his Instruction No. 10, which attempts to invoke the principle of Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). However, we do not think that this is a case where the Weathersby rule applies, and even if it were, appellant's Instruction No. 7, which was granted him, substantially sets forth that theory. Nor was there any error in the court's refusal of appellant's Instruction No. 9, the so-called two-theory instruction. That instruction is never proper except where the case rests entirely upon circumstantial evidence, which is not the situation here. 1 Alexander, Mississippi Jury Instructions (1953), Sec. 172. Moreover, even in a case based entirely on circumstantial evidence, if an instruction is allowed that the evidence must exclude every

reasonable theory other than that of guilt, that is held to embody the essentials of the two-theory instruction, and refusal of the latter is not reversible error. Yarbrough v. State, 202 Miss. 820, 829-830, 32 So. 2d 436 (1947). Appellant's Instruction No. 4 complied with this rule. Saucier v. State, 102 Miss. 647, 659, 59 So. 858 (1912), involved an affirmance of a conviction for the same offense. There the Court held that it was not error to refuse the two-theory instruction. So for all of these reasons we find no error in this respect.

▆▆ ▆ Appellant argues that it was error to refuse his Instruction No. 11, which told the jury that the check was not forged by defendant and that the jury must find that defendant did not sign the name of Mrs. Chambley to it. However, the State did not contend that appellant signed the name of Mrs. Chambley to the check, but contended that that name was one of a fictitious person and that the appellant knew this when he deposited the check. Appellant was not charged with forgery, but with uttering a forgery. ▆▆▆ Moreover, the instruction was also properly refused because it is both argumentive and a comment upon a point in the evidence which was not an issue in the case. ▆▆▆ The same observations are pertinent to appellant's refused instructions No. 14 and No. 15, and that the latter is further erroneous because it would have been a peremptory instruction to the jury that the check was not forged, when under the evidence that was the question for the jury.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.