300 So.2d 922 (1974)
Jimmie KITCHENS
v.
STATE of Mississippi.
No. 48067.
Supreme Court of Mississippi.
September 23, 1974.
Rehearing Denied October 21, 1974.
*923 Travis Buckley, Laurel, for appellant.
A.F. Summer, Atty. Gen., by John C. Underwood, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
Jimmie Kitchens was indicted, tried and convicted in the Circuit Court of Jones County, Mississippi, for the crime of murder. He has appealed to this Court and now contends that the trial court committed reversible errors by granting Instruction No. 5 for the State; refusing an instruction for the defendant; failing to sustain a motion for a directed verdict; and overruling an objection to the argument of the county attorney.
This is a circumstantial evidence case. It is therefore necessary to detail, to some extent, the testimony on which the conviction is based.
Near midnight on January 20, 1973, Jones County Deputy Sheriff John M. McLaurin and Jones County Constable Bob Morgan were traveling south on I-59 in separate automobiles when they observed an automobile parked on the shoulder of the highway within the City of Laurel. The headlights were off, but the emergency lights were blinking. The officers found that the motor was running and near the front of the automobile they discovered the body of Bobby Joe Smith. The body was still warm, so they called by radio for an ambulance and notified the Laurel police. Captain Thomas Segrest and Edgar Campbell, detectives of the Laurel Police Department, came to the scene. These officers testified that they observed a pool of blood about two (2) feet wide and four (4) feet long. They discovered one leaden pellet, a ball point pen in the pool of blood, a broken button, a beer can and a small bit of soil on the pavement. From the body of the deceased at the hospital, they obtained a shirt, a pair of boots, a pair of socks, a belt, lead shots, and a sample of the deceased's blood and hair.
The officers testified in the absence of the jury that about 12:15 A.M. on January 21, 1973, two other officers, Jimmy Landrum and Vester Oral Langley of the Ellisville Police Department [a little town just south of Laurel], were patroling, and they observed a maroonish-brown Pontiac Firebird automobile drive through a stop sign at the intersection of Church Street and Paulding Road. The officers activated the blue light and siren on the patrol car. They then followed the Pontiac until it came to a stop, after being chased for about a mile. When the officers drove alongside the Pontiac, the driver [found later to be Jimmie Kitchens] opened the *924 door to the Pontiac. One of the officers observed a shotgun in the Pontiac. The driver put his hand on the shotgun, whereupon the officer drew his gun and ordered the driver out of the Pontiac and directed him "not to fool with the shotgun." One of the officers went around to the other side of the Pontiac and found the passenger [later found to be a Mr. Huddleston] trying to put a hammer under the seat of the automobile. The driver, Kitchens, "appeared to be drinking pretty heavy." Kitchens and Huddleston were then taken to jail. The officers released Huddleston since he did not appear to be under the influence of intoxicating liquor. He claimed the Pontiac, and it was released to him. The officers were permitted to testify that Huddleston said he hardly knew Kitchens, that he met him at a bar and was taking him home. The officers kept the shotgun and the hammer.
When the jury was brought back into the courtroom, the officers repeated their testimony, except they were not permitted to identify the passenger as Bill Huddleston because they had identified him from a picture that had been shown them and said by others to be Huddleston.
The double barrel shotgun contained in the chambers two (2) three-inch magnum double-ought (00) buckshot shells.
When the Laurel police learned of the arrest of Kitchens, they went to Ellisville, and after having warned the prisoner, they questioned him. They noticed a spot on the defendant's pants leg which appeared to be blood. The prisoner surrendered his clothing, including a pair of shoes, a pair of pants, a shirt, and a pocketbook. The wallet contained a one hundred dollar ($100.00) bill and four (4) twenty dollar ($20.00) bills. They also found between twelve and fourteen dollars in bills and change in the prisoner's shirt pocket. The prisoner was then taken to the Jones County jail.
The items taken from the body of the deceased, the objects found at the scene of the crime, the clothes of the defendant, the shotgun and the hammer were sent to the Federal Bureau of Investigation for microscopic examination and analysis.
Special agents of the Federal Bureau of Investigation, McNair W. Perry and Robert Beams, both testified. They were shown to be qualified and trained in forensic science. They said that there was human blood on the prisoner's trousers, on the top of his right shoe, on his shirt, on his belt, on his socks and on his undershorts. Human blood was also found on the hammer. These agents could not idenify the blood group found on defendant. The blood from the body of the deceased was found to be Group O classification.
A qualified medical doctor who specializes in pathology examined the body of the deceased and found that the cause of death was the destruction of the larnyx, or voice box, by metallic objects obstructing the airway and bleeding into the lungs. He then discovered ten (10) entrance wounds in the shoulder of the deceased and he extracted two pellets from his body. A double-ought (00) buckshot pellet was also found on the stretcher where the body was lying.
The officers' investigation brought to light some of the activity of the deceased and defendant on the night of the homicide. It developed that the deceased, Bobby Joe Smith, met his cousin Doyle Smith around 4 P.M. January 20, 1973, in Moselle, near Laurel, Mississippi. Doyle Smith left his car and began to ride around with Bobby Joe in his car. They stopped from time to time at various taverns and finally came to the Office Lounge, which was operated by Harold Stringer, on Highway 84 in Laurel. Bobby Joe Smith exhibited two (2) one hundred dollar ($100.00) bills. However, he never spent the bills. Sometime later, estimated to be thirty (30) minutes after the two Smiths came, the accused, Jimmie *925 Kitchens, and William J. Huddleston arrived. Sometime later G.W. Blackwell, uncle of deceased, and his wife, Rene Blackwell, Charles Dunnagin and his wife, and Jim Blackwell, another uncle of the deceased, arrived. During the time the deceased sat at the table with the accused, the accused was heard to say: "This is the last beer I will ever buy you." At this point, Doyle Smith told Bobby Joe Smith that he was ready to go home, but said he would stay if he were needed. Bobby Joe assured his cousin that everything was all right. Later, the deceased went outside the lounge with the proprietor, Harold Stringer, and was joined by William J. Huddleston. Mr. Stringer went back into the lounge, leaving Huddleston and Smith alone. The appellant left a few minutes before twelve o'clock.
The appellant, Jimmie Kitchens, did not testify. He introduced two witnesses who were at the table with Bobby Joe Smith in the Office Lounge, who testified that they did not hear the accused make the statement, "This is the last beer I will ever buy you." Mrs. J.D. Kitchens testified that she had withdrawn three hundred seventy-five dollars and ninety-nine cents ($375.99) from the bank, and that she gave the accused two (2) one hundred dollar ($100.00) bills and five (5) twenty dollar ($20.00) bills. Mr. W.D. Carmichael, president of the Merchants and Manufacturers' Bank of Ellisville, testified that the records of the bank showed that Mrs. Kitchens did in fact withdraw three hundred seventy-five dollars and ninety-nine cents ($375.99) from the bank on January 18, 1973.
The jury found the accused guilty as charged, and the trial court sentenced Jimmy D. Kitchens to serve a life term in the state penitentiary for the crime of murder.
The trial court granted the following jury Instruction No. 5 for the State of Mississippi:
"The Court instructs the jury for the State of Mississippi that malice aforethought mentioned in the indictment in this case may be presumed from the unlawful and deliberate use of a deadly weapon."
Appellant says this instruction is an abstract statement of the law and should not have been granted.
The appellant is correct in that this Court has often condemned abstract jury instructions. In most instances appearing in the records of this Court, the trial court refused abstract instructions, as was the case in Browning v. State, 30 Miss. 656 (1856). In Kidd v. State, 258 So.2d 423 (Miss. 1972), this Court did point out that an abstract instruction granted the state was an error. However, there were other errors in that case for which the case was reversed. The general rule in regard to abstract instructions has been succinctly expressed in 26 Am.Jur. Homicide § 517, at 515-16 (1940), wherein it is stated:
"The court is not bound and should not be bound to instruct the jury respecting the abstract rules of the law of homicide, but only respecting the principles applicable to the evidence of killing in the case at bar, but the giving of an abstract instruction is a cause for reversal only when it is reasonably apparent that the jury has been misled." (Footnotes omitted).
We are unable to say from this record that it is reasonably apparent that the jury was misled by the foregoing abstract instruction.
The record is replete with evidence showing that the deceased met his death as the result of a wound caused by double-ought buckshot from a deadly weapon. The foregoing instruction in its abstract form has been approved by this Court in several cases. See Shields v. State, 244 Miss. 543, 144 So.2d 786 (1962); Hughes v. State, 207 Miss. 594, 42 So.2d 805 (1949); Durr v. State, 175 Miss. 797, 168 So. 65 (1936).
*926 The foregoing Instruction No. 5 and similar instructions as to the presumption of malice because of the use of a deadly weapon have given this Court considerable trouble. We have held this instruction to be permissible on several occasions. See Shields v. State, supra; Hughes v. State, supra; Durr v. State, supra.
In other cases we have gone at length to condemn the use of similar instructions. See Blackwell v. State, 257 So.2d 855 (Miss. 1972); Hydrick v. State, 246 Miss. 448, 150 So.2d 423 (1963); Johnson v. State, 223 Miss. 167, 77 So.2d 824 (1955). In the Shields case we said that the giving of such an instruction was not fatal under the facts in that case.
In the instant case the entire case was not before the jury. The defendant did not testify, and his guilt is based upon circumstantial evidence.
The district attorneys, nevertheless, should avoid giving this Instruction No. 5, supra. In the instant case, however, we hold that the error was not sufficient to reverse this case, since it could not have confused or misled the jury under the overwhelming facts here shown.
The appellant contends that the failure of the court to grant appellant the following instruction was prejudicial error:
"The Court instructs the jury for the defendant, Jimmy D. Kitchens, that if there be any facts or circumstances in this case, susceptible of two interpretations, one favorable and the other unfavorable to the accused, and when the jury has considered such facts and circumstances with all the other evidence, there is a reasonable doubt as to the correct interpretation, then you must resolve such doubt in favor of the accused and place upon such facts and/or circumstances the interpretation favorable to the defendant."
This is the often-requested two-theory instruction in popular use by defense attorneys. There is, however, a prevalent misconception as to the proper use of this instruction. In the first place, before this instruction is applicable, there must be two theories in the trial of the case. For example: murder or alibi; homicide or an accident; homicide guilt or mistaken identity. Moreover, the two-theory instruction is only applicable where the case rests entirely upon circumstantial evidence. Coward v. State, 223 Miss. 538, 78 So.2d 605 (1955). In Coward we said:
"Moreover, even in a case based entirely on circumstantial evidence, if an instruction is allowed that the evidence must exclude every reasonable theory other than that of guilt, that is held to embody the essentials of the two-theory instruction, and refusal of the latter is not reversible error." 223 Miss. at 249-250, 78 So.2d at 610.
In the instant case, the State's Instructions Nos. 4 and 7, and Defendant's Instructions Nos. 1, 13, and 15A all required the state to prove guilt of defendant beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. The refusal to grant the two-theory instruction in this case was proper.
The appellant's contention that the court should have sustained his motion for a directed verdict on the ground that the evidence offered by the state was not sufficient to establish the guilt of the defendant beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis is not well taken. We think that the evidence is sufficient to establish a prima facie case for the determination of the jury.
Quoting from Johnson v. State, 23 So.2d 499 (Miss. 1945), we said in Burge v. State, 282 So.2d 223 (Miss. 1973):
"`It was long ago held by this Court in the case of Browning v. State, 33 Miss. 47, citing Cicely v. State, 13 Smedes & M. 202, 211, and the principle *927 has been uniformly adhered to since that time, that the sufficiency of circumstantial evidence is peculiarly for the determination of the jury, "because it is always solemnly to be weighed and acted upon by their understandings and consciences, and is, from its very nature, the subject of inferences and conclusions in their minds," and that "a verdict, therefore, found on circumstantial evidence, will always be permitted to stand unless it is opposed by a decided preponderance of the evidence, or is based on no evidence whatever." (23 So.2d at 500.) (Emphasis supplied).'" 282 So.2d at 230.
We are, therefore, of the opinion that the judgment of the trial court should be and is hereby affirmed.
Affirmed.
SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.