443 So.2d 796 (1983)
Larry PICKETT, Alias Larry Barnes
v.
STATE of Mississippi.
No. 53680.
Supreme Court of Mississippi.
March 30, 1983.
Rehearing Denied January 18, 1984.
Alfred Lee Felder, Mack Brabham, McComb, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, BOWLING and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Pike County wherein Larry Pickett, alias Larry Barnes, appellant, was indicted, tried and convicted for the March 28, 1980, forcible rape of Ruby Marie Hood, a female over the age of twelve. Upon conviction, appellant was sentenced to serve a term of twenty-four years in the custody of the Mississippi Department of Corrections. We affirm.
*797 On March 27, 1980, Ruby Marie Hood, prosecutrix, a nineteen-year-old female, went with a friend, Benevelyn Andrews, to a nightspot in McComb known as the Bird Cage. They arrived at the Bird Cage at approximately 9:30 p.m. While there, the prosecutrix danced with the appellant once or twice.
At approximately 11:45 p.m., the two girls started to leave the lounge. The prosecutrix stopped to talk with a friend while Benevelyn proceeded outside where she was confronted by the appellant who asked if he could talk with her (Benevelyn's) friend. When the prosecutrix came outside, appellant caught her by the arm. Benevelyn continued walking and informed the prosecutrix she would wait in her car. Appellant pulled the prosecutrix over by a car and then pushed her inside and locked the door. Ray Charles Jackson, who was seated in the back seat of the vehicle, held the door locked while appellant got inside. Appellant tried to kiss the prosecutrix and when she resisted, he slapped her. She began blowing the horn on the automobile, whereupon he slapped her again. Appellant jerked the prosecutrix between the front two seats, whereupon she screamed again only to be slapped by appellant. She then rolled down the car window and stuck one leg out trying to escape therefrom. While in the process of trying to escape, she lost one of her shoes. Appellant warned her not to scream or try to fight him. Otherwise he would kill her. Philamon Moore then entered the car on the driver's side, started the engine and then killed it. Appellant told Moore if he didn't want to be any part of it, he could get out. Moore then started the car again and drove to the Camellian Motel.
While enroute to the motel, there was some discussion about a $100 bill. Jackson passed the bill to appellant. The prosecutrix did not know what the money was for or what happened to the money thereafter. When they stopped at a traffic light, the prosecutrix screamed again. Appellant told her if she didn't shut up, he would blow her head off. She saw him pulling something from underneath the seat which she believed to be a gun.
They arrived at the motel at approximately 12:30 a.m. Appellant put his hand around the prosecutrix's throat and told her if she screamed or ran he would kill her. The prosecutrix was pushed into a room. However, Moore did not get out of the automobile and left the scene.
When they got inside, appellant tried to pull the prosecutrix's clothes off, but she pulled away. The prosecutrix then disrobed and appellant slapped her on the bed. Appellant and Jackson undressed. Jackson then allegedly raped the prosecutrix. At this point, two other men entered the motel room and forcibly had sexual relations with the prosecutrix. Appellant then allegedly raped her. She was also forced to perform various other sexual acts with Jackson.
After everyone but appellant had left, he began pleading with the prosecutrix not to tell anyone. She dressed and was then taken to another room at the motel where Jackson and the other two men were asleep. Appellant offered to call the prosecutrix a cab; however, she persuaded him to allow her to call Benevelyn. Appellant put $6 in her shoe for gas. The prosecutrix then left the motel room to wait on Benevelyn. It was around daybreak at this time.
Benevelyn picked up the prosecutrix shortly thereafter. She was crying and shaking. Her hair was messed up and her face beaten up. She was taken to Benevelyn's boy friend's house where her mother was called and told to meet them at the police station. The prosecutrix's mother corroborated Benevelyn's testimony as to her emotional state as well as her physical appearance.
Dr. Benjamin Cranford, III, testified that the prosecutrix was crying, hysterical, and having difficulty speaking at the time of her examination. His findings were consistent with the history given by the prosecutrix. Valium was prescribed to control her anxiety and hysteria.
*798 Appellant's witnesses admitted the sexual acts; however, they denied such was done against the prosecutrix's consent. According to Ray Charles Jackson, the prosecutrix was paid for her services. Jackson testified he got the $100 bill out of the prosecutrix's purse and it was only because she had stayed out so late that she became upset. Jackson denied that any violence was involved.
The jury returned a verdict of guilty as charged, whereupon the appellant was sentenced to serve a term of twenty-four years in the custody of the Mississippi Department of Corrections.

I. Did the trial court err in permitting testimony as to the prosecutrix's reputation in the community for truth and veracity?
In rebuttal, the state produced two ministers who testified that the prosecutrix's reputation in the community for truth and veracity was good. Appellant contends such was error because appellant did not directly attack the prosecutrix's character for truth and veracity during the trial.
In Tiner v. State, 214 Miss. 551, 59 So.2d 287 (1952), this Court stated:
The appellant's attorney also assigns as error the action of the court in permitting the State to prove the general reputation of Wardlaw for honesty and integrity. But no objection was made to that testimony when it was offered. It is only in exceptional cases that this Court will consider assignments of error based upon the admission of testimony which was not objected to at the time it was offered. However, in view of the fact that the same testimony may be offered on a new trial, we do say here that the court should not have permitted the State to prove in rebuttal Wardlaw's general reputation for honesty and integrity under the facts shown by the record. The defendant had not put Wardlaw's reputation in issue. The defendant had merely denied that the alteration in the check had been made prior to the time that he delivered the check to Wardlaw. The main question of fact which the jury had to decide was whether the defendant or Wardlaw had told the truth about the check. And under these circumstances it was highly prejudicial to the defendant to permit the State to bolster Wardlaw's testimony by having the sheriff testify as to his reputation for honesty and integrity. The exact question that we have before us here was passed upon by the Court in the case of Brewer v. Mullins, 97 Miss. 353, 52 So. 257, and in the case of McEwen v. State, 132 Miss. 338, 96 So. 690.
(214 Miss. at 556-57, 59 So.2d at 289-90) (emphasis ours).
Appellant argues that the mere contradiction of the prosecutrix's testimony by his witnesses was insufficient to justify the admission of testimony in support of her reputation for truth, honesty and integrity. Tiner, supra, and 81 Am.Jur.2d, Witnesses § 639 (1976).
While we agree with the appellant that the mere contradiction of a witness's testimony is insufficient to justify the admission of testimony of general reputation for truth, honesty and integrity, an examination of the record leads us to conclude that the prosecutrix's character for truth and veracity was directly assailed by defense witness Ray Charles Jackson. Jackson testified as follows:
Q. And you're telling this Jury, and it's as true as everything else you've said, that she's lying?
A. Damn right she's lying.
Q. Damn right she's lying?
A. That's right.
BY MR. STARRETT:
No further questions.
This was not a case where appellant denied that the alleged incident occurred. Rather his whole defense was predicated on the fact that the sexual acts complained of were engaged in voluntarily by the prosecutrix in return for money. Appellant's witness went much farther than merely contradicting the prosecutrix's testimony. Jackson asserted she (prosecutrix) was lying. *799 Upon these facts we believe the trial court properly admitted the testimony as to the prosecutrix's reputation in the community for truth and veracity because her character for such was directly attacked by the appellant.

II. Did the trial court err in the manner of presenting the array of jurors to the appellant for selection?
Appellant objected to the racial composition of the special venire, prior to trial, contending that of the twenty-three jurors who were present, eighteen were white, which was not a fair representation of the racial balance in Pike County. The court overruled appellant's motion, reciting that the special venire was drawn in open court indiscriminately as the law provided.
On motion for new trial, appellant alleged that the makeup of the jury was unfair in that once the special venire was exhausted, the jurors presented to the appellant were not from a random panel, but instead were a series of jurors excluded from previous cases and who had not yet served on the jury.
In overruling appellant's motion, the trial court stated:
BY THE COURT:
Let the record show that in selection of the 12 to serve on this jury, the defendant exercised 10 peremptory challenges. The State exercised 11. The panel to try the case was agreed to by both sides, and the defense accepted the panel, and it is only after the ballgame is over and the score has been posted that now the defendant comes back and wants to claim that the toss of the original coin was unfair and that is just not true. The jury was selected in exactly the same manner we have selected every jury in this Court in several years, and that is when it went to the regular panel, then the defense or the State was tendered and then the defense tendered those from the regular panel in the same manner that every other jury has been selected, and it's in the order in which the jurors have been impaneled on Monday, the first day they come. So as to that complaint, I see no merit whatsoever.
Only one juror, aside from the alternate juror, was selected from the regular panel.
In Arnold v. State, 171 Miss. 164, 157 So. 247 (1934), we held:
We are further of the opinion, however, that it was the duty of the appellant in this case to have interposed his objections at the time the special venire was being drawn from the jury box as it was then constituted, and, not having done so, he waived the point.
(171 Miss. at 169, 157 So. at 248).
See also Fermo v. State, 370 So.2d 930 (Miss. 1979) (holding a challenge to selection of grand jury foreman on grounds of racial discrimination made after trial untimely); Watkins v. State, 262 So.2d 422 (Miss. 1972) (holding an acceptance of jury precluded challenge to its composition); and Holloway v. State, 242 So.2d 454 (Miss. 1970) (holding the failure to voice an objection until jury selection had been completed and jury was seated in box ready for trial to begin effectively waived any challenge thereto).
Appellant has failed to show any prejudice he may have suffered from the manner in which the jury was selected nor has he alleged fraud in the manner that the jury was selected. Appellant, therefore, effectively waived any irregularity, if any, in the manner in which the array of jurors was presented to appellant for selection by failure to make a proper and timely objection. There is no merit in this assignment of error.

III. Did the trial court err in granting state instruction S-2?
Instruction S-2 stated:
The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant had sexual intercourse with Ruby Marie Hood without her consent and against her will, and that she surrendered to the defendant and permitted him to have sexual intercourse with her because of fear arising out of a reasonable apprehension of great bodily harm at *800 the hands of the defendant, then it is not necessary for you to believe that there was actual physical force on the part of the defendant, or physical resistance on the part of Ruby Marie Hood, in order for you to find the defendant guilty of rape.
Appellant contends this instruction should not have been given because it announced a purely abstract principle of law, was unsupported by the evidence and amounted to an improper comment upon the evidence.
Appellant does not contend that instruction S-2 was an incorrect statement of the law. While abstract instructions are generally condemned where such an instruction could not have confused or misled the jury, the granting of such does not constitute reversible error. Kitchens v. State, 300 So.2d 922 (Miss. 1974).
The instruction, when read, is not confusing or misleading. Moreover, it was somewhat couched in terms of the facts in the present case and cannot be said to be totally abstract. While a more proper instruction might have been drafted, we do not believe the granting of instruction S-2 constituted reversible error.
Appellant also contends that the instruction was unsupported by the evidence because the proof showed that appellant was subjected to a great deal of physical brutality while S-2 told the jury physical force was unnecessary if the prosecutrix submitted to sexual intercourse because of fear arising out of great bodily harm.
The evidence presented clearly supported such an instruction. The prosecutrix was slapped, choked and threatened with her life if she did not succumb to the wishes of her assailants. She repeatedly testified she submitted to sexual intercourse because she was afraid due to appellant's threats to kill her. We find no merit in this argument.
Finally, appellant contends instruction S-2 was an improper comment on the evidence which emphasized specific portions of the testimony. Appellant failed to object at trial to instruction S-2 on this ground. In Daumer v. State, 381 So.2d 1014 (Miss. 1980), this Court stated:
Jury Instruction S-4 is said to be "confusing and improper because the term `culpable negligence' was not adequately defined for the Jury." In considering this part of defendants' argument it is to be noted that the objection made at trial to S-4 was for the reason of "a total failure to show any negligence, much less culpable negligence," but upon appeal they argue that S-4 is erroneous for reasons other than those assigned in the trial court. It has been the rule for some time that when an objection to an instruction is made at trial on one ground and on another ground on appeal, we will not accept such argument as grounds for reversal.
(381 So.2d at 1017).
The failure to object to instruction S-2 on this ground at trial precludes review of such on appeal.
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.

ON PETITION FOR REHEARING
Petition for rehearing denied.
ROY NOBLE LEE, J., and WALKER and BROOM, P.JJ., dissent.
ROY NOBLE LEE, Justice, dissenting:
I think the lower court erred in permitting testimony as to the prosecutrix's reputation in the community for truth and veracity, and, therefore, I dissent from the majority opinion which holds that the lower court did not err in admitting such testimony.
Appellant Larry Pickett and Ray Charles Jackson were separately indicated for the forcible rape of Ruby Marie Hood, a 19-year-old *801 female. Appellant's trial was held beginning April 3, 1981, which resulted in his conviction. Jackson's trial was held April 9, 1981, and he was convicted likewise. Pickett did not testify at his trial, but Jackson was called as a witness and voluntarily testified in Pickett's behalf.
The prosecutrix contended that she was forcibly abducted and raped by Pickett and Jackson, while Jackson's testimony was to the effect that she voluntarily accompanied them from the Bird Cage Lounge to the Camellian Motel where she voluntarily entered into sexual acts with them and was paid for her services. There is a sharp conflict in the testimony of the prosecutrix and Jackson upon which testimony the respective sides depended for their cases.
The following facts are uncontradicted in the record:[1]
1. Pickett, Jackson and the prosecutrix got into an automobile outside the Bird Cage Lounge in a public place.
2. They went to the Camellian Motel, a public place, left the vehicle, and entered a room in the motel.
3. The prosecutrix disrobed.
4. Pickett, Jackson and at least one other person engaged in sexual acts with the prosecutrix during the evening.
When Jackson testified, he denied that force, threats, or violence were used against the prosecutrix. He stated that she voluntarily entered into the sex acts with him, Pickett and another individual. On cross-examination of Jackson, the prosecuting attorney asked questions and received responses as follows:
BY MR. STARRETT:
Q. And Ruby Marie Hood, you know, has made charges against Larry Pickett for rape?
A. She made some of them against me as well.
Q. You and Larry Pickett for rape?
A. Right.
Q. And you're telling this Jury, and it's as true as everything else you've said, that she's lying?
A. Damn right she's lying.
Q. Damn right she's lying?
A. That's right.
It is obvious that the prosecuting attorney had set a trap for the witness. If Jackson had denied the prosecuting witness was lying, he would have been admitting that Pickett and he forcibly raped her. In all of his testimony previous to that question, he had denied that they raped her and he simply answered the prosecuting attorney's question in the affirmative and emphatically so.
The dissenting opinion characterizes the testimony of Jackson as an affirmative charge that the prosecuting witness was lying and that it constituted a direct attack on the character of the prosecutrix. If such were true, every denial by a witness of another witness's testimony would amount to a character attack.
On the basis of Jackson's answer to the prosecuting attorney's question, the lower court permitted the State, over objection, to introduce two ministers whose testimony obviously was for the sole purpose of bolstering the testimony of the prosecutrix.
Reverend Herman Abraham testified as follows:
Q. Are you familiar with her reputation for truth and veracity in the community?
A. I would say I am.
BY MR. FELDER:
We object to this line of questioning of this witness.
BY THE COURT:
All right. What's your objection?
BY MR. FELDER:
It's an attempt to bolster testimony of the witness on the part of the State. It's inadmissible.
BY THE COURT:

*802 Do you have any other objections?
BY MR. BRABHAM:
No, sir.
BY THE COURT:
Let it be overruled.
BY MR. BRABHAM:
We also object on the ground that it is not proper rebuttal, Your Honor.
BY THE COURT:
Overruled.
BY MR. STARRETT:
Q. What is her reputation for truth and veracity?
A. She is a find [sic] young lady as far as I know. I know nothing of her 
Reverend J.M. Varnado testified as follows:
Q. Do you know Ruby Marie Hood?
A. Yes, I do.
Q. How long have you known Ruby Marie Hood?
A. Just about all her life.
Q. Are you familiar with her reputation for truth and veracity in the community?
BY MR. FELDER:
We object. Your Honor. The same objection. It is not proper rebuttal and is an attempt to bolster the testimony of the witness.
BY THE COURT:
I overrule the objection.
BY MR. STARRETT:
Q. The Court says you may answer?
A. Yes, she have a good reputation. I know because I am her pastor. I know her as a church member and she is a regular attendant at church.
In my opinion, the rebuttal testimony of the ministers was irregular, inadmissible, highly prejudicial, and constitutes reversible error.
In McEwen v. State, 132 Miss. 338, 96 So. 690 (1923), a similar question was presented in a forcible rape trial, and this Court said the following:
The previous chastity of the prosecutrix was attacked by the appellant by the testimony of himself and another that each of them had previously had sexual intercourse with her on several occasions. The only testimony in denial of this was that of the prosecutrix herself. In order to bolster up the testimony of the prosecutrix and thereby induce the jury to believe her in preference to the appellant and his witness, the state was allowed to prove by a large number of witnesses that the prosecutrix bore a good reputation for truth and veracity. Her reputation therefor had not been attacked, was therefore not in issue, the evidence relative thereto was consequently not admissible, and was manifestly prejudicial to the appellant. Brewer v. Mullins, 97 Miss. 353, 52 So. 257. [132 Miss. at 344, 96 So. at 691].
In Tiner v. State, 214 Miss. 551, 59 So.2d 287 (1952), the Court considered an error which was not objected to on the trial where rebuttal testimony as to the truth and veracity of a witness was offered when the witness's reputation had not been previously attacked just as in the present case. The Court said:
The appellant's attorney also assigns as error the action of the court in permitting the State to prove the general reputation of Wardlaw for honesty and integrity. But no objection was made to that testimony what it was offered. It is only in exceptional cases that this Court will consider assignments of error based upon the admission of testimony which was not objected to at the time it was offered. However, in view of the fact that the same testimony may be offered on a new trial, we do say here that the court should not have permitted the State to prove in rebuttal Wardlaw's general reputation for honesty and integrity under the facts shown by the record. The defendant had not put Wardlaw's reputation in issue. The defendant had merely denied that the alteration in the check had been made prior to the time that he delivered the check to Wardlaw. The main question of fact which the jury had to decide was whether the defendant or Wardlaw had told the truth about the check. And under these circumstances it *803 was highly prejudicial to the defendant to permit the State to bolster Wardlaw's testimony by having the sheriff testify as to his reputation for honesty and integrity. The exact question that we have before us here was passed upon by the Court in the case of Brewer v. Mullins, 97 Miss. 353, 52 So. 257, and in the case of McEwen v. State, 132 Miss. 338, 96 So. 690.
For the reason stated above, the judgment of the lower court is reversed and the cause remanded for a new trial. [214 Miss. at 556, 59 So.2d at 289].
In Brewer v. Mullins, 97 Miss. 353, 52 So. 257 (1910), which was a replevin suit involving the possession of a mule, the testimony was in sharp conflict, as in the case sub judice. On cross-examination by the attorney for Mullins, the latter was asked, over objection, whether Mullins was a truthful man, to which he answered that he was. In reversing the case, the Court said:
The court erred in permitting testimony to uphold the character of the witness Mullins for truth and veracity, when it had not been directly assailed. It was not an issue before the jury, and could not be made one, except by his adversary attacking it in the manner laid down by law. The issue of the fact before the jury seems to have been about evenly balanced. Under these circumstances, such testimony probably had influential weight with the jury. [97 Miss. at 353, 52 So. at 257].
The legal principle now before the Court has been long established and well recognized. It remains the law today. The violation and disregard of that principle should require reversal of the conviction and judgment entered here.
Therefore, I would sustain the petition for rehearing, withdraw the majority opinion, and reverse and remand the case for a new trial, and I dissent from the majority opinion.
Jackson v. State, 443 So.2d 803 (Miss. 1983), a companion case to Pickett, was affirmed April 6, 1983, by an unpublished opinion stating that the decision was controlled by Pickett. In my opinion, Jackson should be reversed and remanded on petition for rehearing for the same reason as Pickett and my views expressed herein apply to Jackson.
WALKER and BROOM, P.JJ., join this dissent.
NOTES
[1] However, the State contends that force was used in each instance, while appellant contends that the prosecutrix acted voluntarily.