927 So.2d 768 (2006)
Dennis F. DUHART a/k/a Dennis Felton Duhart, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KP-01168-COA.
Court of Appeals of Mississippi.
January 24, 2006.
Rehearing Denied May 2, 2006.
*771 Dennis Felton Duhart, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, for appellee.
EN BANC.
BARNES, J., for the Court.
¶ 1. Dennis Felton Duhart was tried and convicted in the Circuit Court of Lee County for uttering a forgery. From his conviction, Duhart timely appealed to this Court. Finding no error in the proceedings below, we affirm Duhart's conviction.

SUMMARY OF FACTS
¶ 2. On March 3, 2000, someone stole a blank paycheck from North Mississippi Sheet Metal in Pontotoc, Mississippi, made the check out to "John Brown" in the amount of $545, and, on March 7, cashed the check at Wright's Short Stop, a convenience store in Tupelo. On August 1, 2000, Dennis Duhart, an employee of North Mississippi Sheet Metal, was indicted for uttering a forgery in violation of section 97-21-59 of the Mississippi Code Annotated (Rev.2000). Duhart was subsequently tried and convicted of the crime, and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections.[1]
¶ 3. At trial, Patrick Wright, the clerk who cashed the check, identified Duhart as the person who passed the check. He stated that he recognized Duhart as a regular customer, and that he had also cashed a check for Duhart on March 6, 2000, the day before the crime in question occurred. Additionally, the prosecution offered evidence of Wright's pre-trial identification of Duhart. Officer Rob Edwards of the Tupelo Police Department testified that when he interviewed Wright about the incident, Wright recognized a photograph of Duhart in Edwards's file and stated, "That's him right there." David Hendrix, who was employed by North Mississippi Sheet Metal at the time of the offense, testified that on March 3, 2000, he saw Duhart alone in the office in which the blank paychecks were kept. Further, Hendrix and fellow employee Margaret Boatwright testified that employees were not allowed in that office without permission. When Duhart took the stand, he testified that he had entered the office in order to use the telephone because the phone in a nearby room was out of order. Hendrix, however, testified that the telephone had been in perfect working order at the time.

PROCEDURAL HISTORY
¶ 4. Prior to his indictment, Duhart had been arrested for the crime and, on April 14, 2000, he was released on bond. After *772 being released, Duhart fled to Ohio. When Duhart failed to appear in the Lee County Circuit Court on the forgery charge and upon a separate charge of grand larceny, the State of Mississippi issued a fugitive warrant for his arrest. Duhart was arrested and detained by Ohio authorities, and was scheduled for an identification hearing on November 26, 2001. When, after several notices, Mississippi officials failed to appear at Duhart's proceedings, the Lucas County (Ohio) Court of Common Pleas dismissed the fugitive warrant and, on April 18, 2002, released Duhart from custody. It appears that at some point in May of 2002, a bail bondsman retrieved Duhart from Ohio and delivered him to Lee County authorities.[2]
¶ 5. Upon being returned to Mississippi, Duhart was incarcerated in the Lee County Jail pending the outcome of his trial. On February 24, 2003, Duhart filed a petition for habeas corpus in which he asserted that he had been improperly extradited from Ohio and that, as a result, his confinement was illegal. Along with his habeas petition, Duhart filed a motion requesting a hearing on the issue; however, Duhart did not pursue the motion to a ruling prior to his trial. On May 8, 2003, Duhart was tried and convicted of uttering a forgery. At his sentencing hearing on May 23, 2003, Duhart was sentenced to fifteen years in the custody of the Mississippi Department of Corrections. At the same hearing, Duhart pled guilty to a charge of DUI maiming and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections. The sentencing judge ordered that the sentences run concurrently.
¶ 6. On May 16, 2003, Duhart filed a motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, a new trial. The motion was denied by the Lee County Circuit Court on September 1, 2004, nearly sixteen months after it was filed. Also on September 1, 2004, the circuit court dismissed as moot Duhart's petition for habeas corpus. Duhart timely appealed to this Court, asserting the following: (1) that the court erred in dismissing his habeas petition; (2) that the trial court abused its discretion in failing to rule on his habeas petition and motion for JNOV in a timely manner; (3) that the court erred in denying his motion to suppress Patrick Wright's pre-trial identification testimony; (4) that the verdict was against the overwhelming weight and sufficiency of the evidence; and (5) that the trial court erred in denying his motion for new trial in light of newly discovered evidence.[3] Finding these issues to be without merit, we affirm Duhart's conviction.

ISSUES AND ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN DISMISSING DUHART'S HABEAS PETITION.

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RULE UPON DUHART'S HABEAS PETITION AND MOTION FOR JNOV, OR, IN THE ALTERNATIVE, A NEW TRIAL, IN A TIMELY MANNER.
*773 ¶ 7. The Mississippi Supreme Court has repeatedly held that it is the movant's responsibility to obtain a ruling from the court on motions, and that failure to do so constitutes a waiver. See, e.g., Byrom v. State, 863 So.2d 836, 851(¶ 27) (Miss.2003); see also URCCC 2.04 ("It is the duty of the movant . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion . . ."). The record before this Court does not show that Duhart acted diligently in pursuing his habeas petition and motion for preliminary hearing to decision. In fact, in his order dismissing Duhart's habeas petition as moot, the trial judge noted that instead of setting the petition and motion for hearing and obtaining a ruling, Duhart and his counsel made the decision to go to trial on the forgery charge.
¶ 8. After closing his case in chief, Duhart raised the issue of the allegedly improper extradition, asserting that he had been "taken into custody by the Lee County Sheriff's Office and transported back to the State of Mississippi." When the assistant district attorney responded that Duhart had been returned to Mississippi by a bail bondsman rather than by the State, Duhart offered no argument or evidence in reply. He presented no evidence to support his claim that he had been improperly extradited, and failed to request a ruling on his petition. Additionally, though the record shows that defense counsel raised the issue of the motion for preliminary hearing, he again failed to pursue the motion to a ruling. Because the record shows that Duhart did not diligently pursue his habeas petition and motion for preliminary hearing to ruling, the motions are deemed waived. Id. Because the motions were waived, we find no error in the trial court's dismissal of Duhart's habeas petition.
¶ 9. Duhart also asserts that the trial court abused its discretion in failing to rule upon his motion for JNOV, or, in the alternative, a new trial, in a timely manner. Again, however, the record is absent of any indication that Duhart diligently pursued the motion to hearing. In Dyer v. State, 300 So.2d 788, 789 (Miss. 1974), the Mississippi Supreme Court stated:
A trial judge is not charged with knowledge of every paper filed with the court clerk. It is not the duty of the judge, ex mero motu, to search out and bring up such matters. On the other hand, the affirmative duty rests upon a party filing a motion to follow up this action by bringing it to the attention of the judge and by requesting a hearing upon it.
It was Duhart's duty to bring the motion to the attention of the circuit court, and the record does not show that he was diligent in his efforts. We cannot hold the circuit court in error for Duhart's failures. See id.

III. WHETHER THE TRIAL COURT ERRED IN DENYING DUHART'S MOTION TO SUPPRESS PATRICK WRIGHT'S PRE-TRIAL AND IN-COURT IDENTIFICATION TESTIMONY.
¶ 10. Approximately one week prior to trial, Duhart filed a motion to suppress the pre-trial and in-court identification of him by Patrick Wright, alleging that the identification testified to by Officer Edwards was impermissibly suggestive and that Wright's subsequent in-court identification was tainted as a result and should not be admitted. At trial, the court heard argument on the motion and determined that it would allow Wright's identification testimony. Duhart asserts on appeal that the trial court erred in denying the motion to suppress.
*774 ¶ 11. The admission of evidence rests within the discretion of the trial court. Martin v. State, 872 So.2d 713, 721(¶ 25) (Miss.Ct.App.2004). "When determining whether to suppress evidence of a pre-trial identification, the trial court must resolve whether the identification procedure used by law enforcement was unnecessarily suggestive." Cochran v. State, 913 So.2d 371, 376(¶ 17) (Miss.Ct. App.2005). A trial court's finding that a pre-trial identification procedure was impermissibly suggestive does not preclude the introduction of the identification evidence. Thompson v. State, 726 So.2d 233, 235(¶ 9) (Miss.Ct.App.1998). In determining whether an in-court identification would result in a substantial likelihood of irreparable misidentification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at (¶ 10) (citing Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).
¶ 12. At trial, Wright testified that when Officer Edwardswho had been assigned to investigate the casemade the initial visit to the store to interview him, "[Officer Edwards] was sitting down, had a folder with him, and as we were talking, he opened the folder and was flipping through the folder, and I happened to see a photograph and I identified [Duhart] at that time [as] the person that cashed the check." The photograph in question showed Duhart in prison garb with the words "Lee County Jail" at the top. In determining whether the identification testimony should be allowed, the trial court addressed each of the five Biggers factors in depth. The court found (1) that Wright had ample time to observe Duhart at the time of the crime, as he personally cashed Duhart's check; (2) that Wright's testimony showed that he had been attentive at the time Duhart passed the instrument; (3) that Wright's prior description of Duhart was not particularly strong, but was not weak enough to militate against admitting the identification; (4) that Wright did not waver in his in-court identification of Duhart as the culprit; and (5) that the length of time between the crime and Wright's initial identification had been short. It is clear from the record that the trial court considered the necessary factors and made a well-founded decision. Therefore, we find that the trial court did not abuse its discretion in denying Duhart's motion to suppress Wright's identification testimony.

IV. WHETHER THE VERDICT WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
¶ 13. When reviewing the denial of a motion for new trial based on an objection to the weight of the evidence, this Court will only reverse a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). In making our determination, this Court is required to view the evidence in the light most favorable to the verdict; we will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. However, in considering whether the evidence is legally sufficient to sustain a conviction in the face of a motion for JNOV, our inquiry is "whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" Id. at 843(¶ 16) (quoting Carr v. State, 208 *775 So.2d 886, 889 (Miss.1968)). The critical question in dealing with such an issue is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis added). We will deem the evidence sufficient if the evidence against the defendant is such that "reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense." Id.
¶ 14. Section 97-21-59 of the Mississippi Code Annotated (Rev.2000) states that:
Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.
¶ 15. It is clear from the plain text of the statute that in order to sustain a conviction of uttering forgery, the State must have proved beyond a reasonable doubt (1) that the defendant published or uttered as true (2) a forged, altered, or counterfeit instrument, (3) knowing the instrument to be forged, altered, or counterfeited, (4) with the intent to defraud. Miss.Code Ann. § 97-21-59; see also Coward v. State, 223 Miss. 538, 546-47, 78 So.2d 605, 608 (1955) (reciting elements of crime).
¶ 16. The State put forth sufficient evidence to prove each of the four elements. As to the first element, Patrick Wright testified that it was Duhart who passed the check to Wright's Short Stop for cashing. Secondly, Margaret Boatwright testified that she was certain that the instrument was forged. She testified that North Mississippi Sheet Metal always printed its checks via computer, and that the check passed by Duhart contained crooked text and appeared to have been filled out via typewriter. Boatwright stated that the check in question had not been issued in the ordinary course of business by the company. In regard to the third element, the evidence, taken in its entirety, shows that Duhart knew that the check was forged. The State presented evidence that Duhart took the blank check from his employer and filled it out using a typewriter. That Duhart knew the check to be forged is a reasonable inference from this evidence. Lastly, as to the question of intent, if Duhart made the utterance with knowledge of the forgery, this necessarily means that he did so with intent to defraud. See Coward, 223 Miss. at 546-47, 78 So.2d at 609. Viewing the evidence in the light most favorable to the prosecution, it is evident that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
¶ 17. Furthermore, though Duhart claims that the verdict was against the overwhelming weight of the evidence, the record makes it clear that the evidence against him was substantial. Considering the evidence of Duhart's guilt in the light most favorable to the verdict, we cannot find that the evidence preponderates against the verdict in any way.
¶ 18. Duhart's assignment of error is without merit.

V. WHETHER THE TRIAL JUDGE ERRED IN DENYING DUHART'S MOTION FOR NEW TRIAL IN LIGHT OF THE NEW TIME CARD EVIDENCE.
¶ 19. Duhart contends that the trial court abused its discretion in not granting a new trial based upon the discovery *776 of handwritten time sheets showing that Duhart worked a full eight hours on March 6, 2000. He claims that this evidence undermines Patrick Wright's testimony that he recognized Duhart on March 7 because he had cashed a check for Duhart the day before.
¶ 20. "Newly discovered evidence warrants a new trial if the evidence will probably produce a different result or verdict; further, the proponent must show that the evidence `has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching.'" Ormond v. State, 599 So.2d 951, 962 (Miss.1992) (quoting Smith v. State, 492 So.2d 260, 263 (Miss.1986)) (emphasis added). If these requirements are met, we may overrule a trial court and grant a new trial based upon the newly discovered evidence. Little v. State, 736 So.2d 486, 489-90(¶ 15) (Miss.Ct.App.1999).
¶ 21. In the case at hand, it is not at all clear that the new evidence would probably produce a different result or verdict. While the handwritten time sheets corroborate Duhart's contention that he was not in Tupelo on March 6, the time sheets do not necessarily prove Duhart's version of the story. Because of the short distance between Pontotoc and Tupelo, it is still quite feasible that Duhart traveled to Tupelo during his lunch break to cash a check at Wright's Short Stop on March 6, 2000. Furthermore, Duhart has failed to show that he acted with due diligence in discovering the time sheet evidence. In his motion for new trial, Duhart conceded that even though there had been a minute possibility of discovering the time sheets, he opted to proceed to trial instead of seeking a continuance. Importantly, Duhart did not contend that he could not have obtained the time sheets through the exercise of due diligence. Accordingly, the circuit judge did not abuse his discretion in denying Duhart's motion for JNOV, or in the alternative, a new trial. This issue is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF UTTERING FORGERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONCURRENTLY WITH SENTENCE IN LEE COUNTY CR00-639(G)L, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.
NOTES
[1] The transcript of Duhart's sentencing hearing reveals that the circuit court also ordered Duhart to pay $545 in restitution to Wright's Short Stop. However, the sentencing order does not contain any reference to restitution. The circuit court, however, has the inherent power to correct the sentencing order to make the order correspond with the judgment actually rendered. See Kitchens v. State, 253 Miss. 734, 737, 179 So.2d 13, 14 (1965); Harvey v. State, 919 So.2d 282 (¶ 14) (Miss.Ct. App. 2005).
[2] It is not clear from the record exactly who retrieved Duhart from Ohio. This matter will be discussed further infra.
[3] Additionally, Duhart asserts that his guilty plea in the DUI maiming case was not knowing and voluntary, and that he received ineffective assistance of counsel at his plea hearing. However, because this is a direct appeal from Duhart's conviction of uttering a forgery, these issues are not properly before this Court. Duhart may raise these issues in a motion for post-conviction relief, if he has not already done so.