832 So.2d 568 (2002)
Joann CARMICHAEL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00297-COA.
Court of Appeals of Mississippi.
May 21, 2002.
Rehearing Denied August 27, 2002.
Certiorari Denied December 5, 2002.
Richard A. Rehfeldt, Jackson, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, and IRVING, JJ.
IRVING, J., for the court.
¶ 1. Joann Carmichael was convicted in the Circuit Court of Leake County of the sale of cocaine. She has appealed and contends (1) that the trial court erred in giving the Sharplin instruction and requiring the jury to continue deliberating following an eleven to one deadlock, and (2) that the trial court erred in sentencing her *569 in absentia. We reject Carmichael's arguments and affirm the decisions of the trial court.

FACTS
¶ 2. The facts surrounding the sale of the cocaine are not relevant to the disposition of the issues raised in this appeal. It is sufficient to state that according to the State's proof, Carmichael sold fifty dollars worth of cocaine to Jo Comans, a confidential informant working for the chief of police of the City of Carthage and the sheriff of Leake County. Further, the chief and sheriff, using binoculars, observed the transaction from a distance. Of course, Carmichael denies that any sale took place. In any event, during a two-day trial, a jury convicted Carmichael of selling cocaine. This appeal stems from what transpired during and after the trial on January 16-19, 2001.
¶ 3. On January 16, approximately one hour and twenty-six minutes after the jury was retired to deliberate, the jury was returned to the courtroom for what the trial judge called a status report. The foreman of the jury informed the judge that the jury was split eleven to one. It was approximately 5:10 p.m. when this occurred. The trial judge then sent the jury back to the jury room for further deliberations. Approximately fifty-three minutes later, the jury was returned again to the courtroom, and the trial judge inquired as to whether it had been able to reach a verdict. The foreman of the jury informed the court that it had not been able to do so, whereupon the court pondered available options but ultimately decided to give the Sharplin charge.[1] After giving the Sharplin charge, the trial judge ordered the jury to continue deliberating but offered to have dinner brought in so they could eat and relax a bit before commencing further deliberations. In response to the court's request for comment on the court's offer, the foreman of the jury stated, "I don't know if anything would change right now. We've been over everything." Following the foreman's comments, the trial judge retired the jury to the jury room for further deliberations. Approximately fourteen minutes later, the trial judge returned the jury to the courtroom for the third and final time and discharged the jury until 9:00 a.m. the following day. After the jury was discharged, the trial judge inquired of counsel for both the State and Carmichael as to whether either desired to place anything in the record. Neither did.
¶ 4. The following morning, January 17, the trial judge advised that he had received a call at home from Carmichael's counsel who reported that Carmichael's family had called and advised that Carmichael *570 was having chest pains and had been transported to St. Dominic Hospital in Jackson.[2] Following the court's announcement regarding Carmichael's whereabouts, the court asked Mr. Brooks if he had anything that he wanted to place in the record. Mr. Brooks responded in the negative. The bailiff was then directed to bring the jury into the courtroom so that the court could inquire if it had followed the court's instructions given the previous evening when it was retired for the night. The bailiff returned and advised that the jury had already reached a verdict. At that point, Mr. Brooks moved for a mistrial. His motion was overruled.
¶ 5. At 9:16 a.m., the jury was brought into the courtroom, at which time the trial judge inquired as to whether it had followed the court's instructions not to discuss the case with each other or family members. No juror indicated that he had failed to follow the court's instructions. The jury was then retired to the jury room for further deliberations. Approximately twenty minutes later the jury announced that it had reached a verdict. After receiving the jury's verdict and discharging the jury, the court continued the case pending receipt of a pre-sentence report and contact with Mr. Barnett, Carmichael's counsel who was not present when the jury reported.
¶ 6. Two days later, on January 19, 2001, at approximately 1:35 p.m., the court reconvened for the purpose of sentencing Carmichael. She was not present, but her counsel did not object to the sentencing in her absence. He explained that he had told her on the morning of the previous day that she had been convicted and that she needed to report to the sheriff's office by 3:00 p.m. that day. She promised to do so but failed. He further explained that he had not heard from her since.
¶ 7. The trial judge found that Carmichael "wilfully, deliberately, and intentionally absented herself from the jurisdiction of the court" and sentenced her to twenty years in the custody of the Mississippi Department of Corrections and revoked her bond. A judgment was entered accordingly. Carmichael's post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied, and this appeal ensued.

DISCUSSION AND ANALYSIS OF THE ISSUES
1. The Sharplin Instruction
¶ 8. Carmichael argues that, before the Sharplin charge may be given, there must be a finding by the trial judge of the likelihood that further deliberations would bring about a verdict. Carmichael asserts that this prerequisite was not met. Consequently, she argues, the trial judge erred in giving the instruction. On the other hand, the State argues that the issue is procedurally barred because Carmichael failed to object to the granting of the instruction. The State also argues that the giving of the instruction was proper under the circumstances.
¶ 9. We agree with the State that Carmichael did not object to the giving of the instruction. However, the record reflects that the trial judge, prior to giving the instruction, did not seek advice or comment from the attorneys nor did he give them an opportunity to be heard. The trial judge discussed openly the possible options available to him and thereafter immediately decided to give the instruction. Under these facts, we decline to procedurally bar consideration of the issue.
¶ 10. Having decided against the procedural bar, we also agree with the *571 State's second argument, that the giving of the instruction was proper. It is clear from the record that, at the time the instruction was given, the jury was deadlocked eleven to one. The eleven to one deadlock was made known when the jury was brought in for a status report after approximately an hour and a half of deliberations. At that time, the judge asked, "Do you feel relatively optimistic that you all can discuss further and work through this thing for a verdict?" The foreman answered, "Maybe." The instruction was not read at this time; rather the jury was returned to the jury room for further deliberations. It was not until after an additional fifty-three minutes of deliberations that the trial judge gave the instruction.
¶ 11. Prior to giving the instruction, the trial judge did not inquire as to whether the split favored the prosecution or the defense. He made no comments which could reasonably be interpreted as giving his preference as to the outcome. He simply gave the instruction and inquired if the jury would like to have dinner before continuing its deliberations. As already observed, when the offer for dinner was made by the court, the foreman of the jury stated, "I don't know if anything would change right now. We've been over everything." Following the foreman's comments, the record reflects the following:
BY THE COURT: All right as far as being hungry or anything, is thatI don't know what time people usually eat. We eat at different times at night; but, if that is a factor, I want you to be comfortable, as far as not being hungry. As I said, I gave you the option about maybe coming back in the morning.
JUROR BROWN (JURY FOREMAN): Maybe.
Following the above colloquy, the jury was returned to the jury room. Approximately fourteen minutes later, after the court received a note from the jury, the court recessed until 9:00 a.m. the next day.[3]
¶ 12. This Court finds, on these facts, that trial court did not err in giving the Sharplin instruction. Consequently, there was no abuse of discretion in denying Carmichael's motion for a mistrial.
2. Sentencing in Absentia
¶ 13. Carmichael recognizes that, if she intentionally absented herself from the jurisdiction of the court, it was permissible, at the discretion of the trial court, for the court to proceed with sentencing in her absence. However, she argues that she did not knowingly and wilfully absent herself from court. She argues strenuously that she did not know about her sentencing date. Not surprisingly, the State argues that Carmichael, by her actions, waived her right to be present. In support of its position, the State cites McKnight v. State, 738 So.2d 312 (Miss.Ct. App.1999), which holds that the trial court may proceed in the absence of a defendant who voluntarily absents himself from the trial at any point after the trial begins. Id. at (¶ 5).
¶ 14. We are not persuaded by Carmichael's protestations. Her trial counsel advised the court that he informed her that she had been convicted and that she should report to the sheriff's office the Thursday prior to the Friday when she was sentenced. While counsel did not state that he told her she was being sentenced on Friday, had she reported to the sheriff's office as she had been told, she would have known about her sentencing the following day. Moreover, trial counsel advised the court that he had no objection *572 to the court proceeding with sentencing. The record reflects the following:
BY THE COURT: All right. You may have said it at the beginning, but let me just reinforce it. You make no objection, then, do you as far as the Court proceeding the sentencing without her presence here?
BY MR. BARNETT: No, sir.
¶ 15. As we have already observed, the trial judge found that Carmichael's absence was intentional. Given her trial counsel's statement to the court, we cannot say that this finding was clearly erroneous or without evidentiary anchor. In arriving at this conclusion, we are aware that Carmichael's counsel was not under oath when he advised the court about his discussions with her. However, the trial court was entitled to rely upon his representations inasmuch as counsel is an officer of the court.
¶ 16. We agree with the State that, under the holding in McKnight and by the authority of Mississippi Code Annotated § 99-17-9 (Rev.2000),[4] Carmichael waived her right to be present at sentencing. This issue lacks merit, and the decision of the trial court on this issue is affirmed.
¶ 17. We affirm the trial court in toto. However, we are aware that the trial court, pursuant to a post-conviction relief (PCR) motion filed by Carmichael, reduced her sentence from twenty years to fifteen years. Apparently, the PCR motion was filed some time after this appeal was effectuated. Consequently, nothing in this opinion should be construed as affecting the judgment in the post-conviction relief proceedings since those proceedings are not addressed in this appeal.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] In Sharplin v. State, 330 So.2d 591, 596 (Miss.1976), the Mississippi Supreme Court authorized the giving of the following instruction when" the trial judge is confronted by a hung jury:"

I know it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
This instruction is now widely referred to as the Sharplin charge.
[2] Carmichael's counsel did not return for the second day of jury deliberations; he arranged for a local attorney, Mr. Robert Brooks, to attend for him.
[3] The note is not included in the record, but later comments by the trial judge indicate that the note advised that the jury believed it might reach a verdict the next day if it was then released for the night.
[4] This code section reads in pertinent part:

In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court in his absence, if he be in custody and consenting there to. Miss.Code Ann. § 99-17-9 (Rev.2000).