997 So.2d 207 (2008)
Decarlos JENKINS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00399-COA.
Court of Appeals of Mississippi.
July 29, 2008.
Rehearing Denied December 2, 2008.
*209 Leslie S. Lee, Jackson, Allan D. Shackelford, Clarksdale, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. Decarlos Jenkins was convicted in the Circuit Court of Coahoma County of Count I, possession of cocaine, and Count II, possession of less than thirty grams of marijuana. On Count I, the circuit court sentenced Jenkins as a habitual offender to life in prison without the possibility of parole or probation. On Count II, the circuit court ordered Jenkins to pay a fine of $250. Aggrieved, Jenkins now appeals. He presents six issues, which we quote verbatim:
I. The evidence was insufficient to support the [verdict].
II. The verdict was against the overwhelming weight of the evidence.
III. The trial judge erred in admitting State's exhibit 11 without a sufficient chain of custody.
IV. [The] trial court improperly sentenced [the] Appellant in absentia.
V. Jenkins's sentence of life without parole as [a] habitual offender for possession of essentially a misdemeanor amount of cocaine is disproportionate to the crime and constitutes cruel and unusual punishment.
VI. The trial judge committed reversible error [in] granting an abstract instruction on examples of direct and circumstantial evidence.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On the evening of October 11, 2006, officers from the Clarksdale Police Department and from the Mississippi Bureau of Narcotics conducted a search pursuant to a search warrant. Officers entered a residence at 451 Garfield Street, Clarksdale, Mississippi. At the residence, they discovered Jenkins and arrested him for possession of a controlled substance.
*210 ¶ 4. The State called Corporal Ricky Bridges, Agent James Jones, and Officer Joseph Wide to testify during its case. Each of the officers was on the search team on the night that Jenkins was arrested. Officer Wide noticed Jenkins running through the house and apprehended him in the kitchen. Officer Wide then patted down Jenkins for any weapons, and he then led him into the living room. Agent Jones later searched Jenkins and discovered two rock-like substances and a green leafy substance in Jenkins's shirt pocket. Corporal Bridges then took a picture of the inside of Jenkins's pocket, which depicts the substances that Agent Jones discovered. Each of the officers testified that Jenkins was wearing a grayish button-up shirt that night, and they all agreed that exhibit S-11 was that shirt.
¶ 5. In addition to the drugs found in Jenkins's shirt pocket, the officers testified to finding a larger bag of the rock-like substance in the bedroom along with an identification card and badge belonging to Jenkins. Officers also recovered a stack of letters addressed to Jenkins in the dresser in the bedroom. In the kitchen, officers discovered a larger bag of the green leafy substance behind the refrigerator. Officers located another man, Marcus McCollough, in the bathroom.
¶ 6. Officer Leroy Austin, the Coahoma County jailor, testified as to the procedures in place for taking and storing items from inmates when they are booked into the jail. All of an inmate's clothes are taken except his underwear, and the clothes are placed in a property bin. Officer Austin testified that Officer Hite[1] was on duty when Jenkins arrived at the jail. Nevertheless, records indicated that the procedure was followed, and Jenkins's clothes were placed in Jenkins's inmate bin, number ninety-five, when he was checked in. Only four authorized sergeants have access to the storage bins, and a record is kept of anyone who comes to check the bins. Officer Austin said that Jenkins's clothes remained stored there until Corporal Bridges removed them in preparation for trial.
¶ 7. Upon stipulation to her expertise by the defense, the circuit court admitted Teresia Hickmon, with the Mississippi Crime Laboratory, to testify as an expert in the field of forensic drug analysis. Hickmon testified that the items found in Jenkins's pocket were 0.18 gram of cocaine and 0.84 gram of marijuana. She also testified that it was 9.45 grams of marijuana that officers recovered from behind the refrigerator, and it was 4.93 grams of cocaine that officers found on the dresser in the bedroom.
¶ 8. The defense first called Jenkins's mother to testify in his defense. She said the house at 451 Garfield was her house, and Jenkins did not live there. She waited to tell anyone that it was her house, however, until the day before the trial, when she told Jenkins's attorney. She denied that the drugs belonged to her.
¶ 9. Jenkins also took the stand, and he denied that he lived at 451 Garfield. He said he lived with his uncle, and the house in question belonged to his mother. He admitted that he would stop by the house often.
¶ 10. Jenkins testified that on the night that he was apprehended, he was at the house babysitting his girlfriend's infant daughter. He claimed that he was in the bedroom with the child when police broke down the door. He said he did not know what was going on, so he left the infant and tried to run out the back door.
*211 ¶ 11. Jenkins denied that any of the drugs in the house belonged to him, and he also denied that he was wearing a gray shirt when he was apprehended. He admitted that he had worn a gray button-up shirt to a job interview earlier that day, but he claimed that he was wearing a tank top when police came into the house.
¶ 12. At the close of the trial, the jury returned a verdict of guilty on the lesser-included offense of possession of 0.1 gram but less than two grams of cocaine and guilty of possession of less than thirty grams of marijuana. The circuit court postponed sentencing. At the rescheduled sentencing hearing, the circuit court took notice of the fact that shortly after his conviction, Jenkins escaped from custody at the Coahoma County Jail, and he had yet to be apprehended. Accordingly, the circuit court found that Jenkins had voluntarily left the custody of the sheriff's department; therefore, he voluntarily waived his right to be present for the sentencing hearing.
¶ 13. The State presented evidence that Jenkins previously had been convicted of robbery and of possession of a firearm by a convicted felon, which arose out of two separate incidents. The State also presented evidence that he served more than one year of jail time for each of his prior convictions. After receiving the State's evidence, the circuit court sentenced Jenkins to life in prison as a habitual offender for Count I, and the court ordered him to pay a fine of $250 for Count II.

ANALYSIS OF THE ISSUES

I. Whether the evidence was sufficient to support the verdict.
¶ 14. Jenkins first takes issue with the circuit court's denial of his motion for a judgment notwithstanding the verdict and his motions for a directed verdict. Jenkins cites a number of factors that he believes show that the evidence was insufficient to support his conviction: (1) there was no testimony as to what was found on the other man at the house, (2) the State failed to call Officer Hite to complete the chain of custody, (3) no fingerprints were taken, (4) Officer Wide did not pat down Jenkins's shirt pocket, (5) exhibit S-11 was an ordinary shirt with no distinguishing features, (6) there were no pictures of Jenkins wearing exhibit S-11, and (7) some of the officers who were present during the search were not called to testify. Jenkins concludes that the evidence was insufficient to prove that he possessed any drugs on his person; therefore, the circuit court should not have allowed the case to go to the jury.
¶ 15. In reviewing a challenge to the sufficiency of the evidence, we ask whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 16. The State offered a lesser-included-offense jury instruction, which allowed the jury to convict Jenkins of the possession of the cocaine and marijuana found in his shirt pocket. Section 41-29-139(c)(1)(B) of the Mississippi Code Annotated (Rev.2005) proscribes the possession of 0.1 gram but less than two grams of a Schedule I or II controlled substance, which under section 41-29-115(a)(4) of the *212 Mississippi Code Annotated (Rev.2005) includes cocaine. Section 41-29-139(c)(2)(A) of the Mississippi Code Annotated (Rev. 2005) proscribes the possession of thirty grams or less of marijuana. To survive a motion for a directed verdict or a motion for a judgment notwithstanding the verdict on these charges, the State had to present evidence that Jenkins was in possession of at least 0.1 gram but less than two grams of cocaine for Count I. On Count II, the State had to present evidence that Jenkins was in possession of thirty grams or less of marijuana.
¶ 17. In support of its case, the State offered the testimony of three officers who participated in the search of the house where Jenkins was apprehended. Corporal Bridges, Agent Jones, and Officer Wide all testified that the gray shirt, exhibit S-11, was the shirt that Jenkins was wearing on the night of the search. They all testified that the cocaine and marijuana were found in the front pocket of the shirt. Not only did they identify the shirt, but they identified Jenkins as the individual they searched on the night in question.
¶ 18. Hickmon testified that her analysis at the Mississippi Crime Laboratory revealed that the substances found in Jenkins's pocket were in fact 0.18 gram of cocaine and 0.84 gram of marijuana. Along with the officers' testimonies, the State introduced the drugs and the shirt into evidence.
¶ 19. Taking all of the evidence in a light most favorable to the verdict, we find that the State presented sufficient evidence to establish each of the essential elements of the charges against Jenkins. The circuit court properly denied Jenkins's motion for a judgment notwithstanding the verdict and his motions for a directed verdict; therefore, this issue is without merit.

II. Whether the verdict was against the weight of the evidence.
¶ 20. Next, Jenkins argues that the jury's verdict was against the overwhelming weight of the evidence, and he takes issue with the circuit court's denial of his motion for a new trial. Jenkins again finds fault with the State's chain of custody regarding the gray shirt. He argues that without Officer Hite's testimony regarding what Jenkins was wearing when he was brought to the jail, the case should not have gone to the jury. Jenkins seems to suggest that police might have confused him for McCollough, who was also in the house at the time of the search. Jenkins points out that the State presented no evidence as to "what clothing [McCollough] wore, what, if any, drugs were found on him, or even if he was arrested."
¶ 21. A motion for a new trial questions the weight of the evidence. Bush, 895 So.2d at 844(¶ 18). Such a motion is within the discretion of the trial court, which "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. When reviewing a denial of a motion for a new trial, we weigh the evidence in the light most favorable to the verdict. Id.
¶ 22. As we discussed in the previous point of error, three police officers testified that Jenkins was searched on the night in question, and they testified that the cocaine and marijuana were found in the pocket of the shirt he was wearing. Hickmon confirmed that the substances found were cocaine and marijuana.
¶ 23. Jenkins's testimony that he was wearing a tank top when the officers came into the house, contradicted that of the *213 three officers. However, the jury is the judge of the witnesses' credibility. Jones v. State, 920 So.2d 465, 472(¶ 22) (Miss. 2006) (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). In this case, the jury resolved the issue of credibility against Jenkins.
¶ 24. The testimony overwhelmingly revealed that the cocaine and marijuana were found on Jenkins's person on the night that the officers searched the house. We do not see any merit to Jenkins's contention that the State should have presented evidence regarding what McCollough was wearing or what became of him. If Jenkins had any evidence that McCollough was actually the one with the drugs or was wearing the gray shirt, he could have presented that evidence himself. Taking the evidence most favorably to the verdict, we cannot say that the verdict was against the overwhelming weight of the evidence presented. This issue is without merit.

III. Whether it was error to admit the gray shirt, exhibit S-11, into evidence.
¶ 25. Jenkins argues that the circuit court erred in admitting State's exhibit S-11 into evidence because the chain of custody was incomplete. He takes issue with the fact that the circuit court admitted the shirt into evidence even though the State did not present the testimony of Officer Hite, who took the shirt when Jenkins was placed in jail.
¶ 26. The admission of evidence is within the discretion of the trial court. Culp v. State, 933 So.2d 264, 274(¶ 26) (Miss.2005) (citing Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000)). We will only reverse a decision on whether to admit evidence if the trial court abused its discretion. Id.
¶ 27. Notwithstanding Jenkins's argument that the circuit court should not have admitted the shirt because of the alleged faulty chain of custody, the rule is that breaks in the chain of custody go to the weight of the evidence, not its admissibility. Robinson v. State, 758 So.2d 480, 488(¶ 31) (Miss.Ct.App.2000) (citing Fisher v. State, 481 So.2d 203, 225 (Miss.1985)). Jenkins even cited the holding from Robinson in his prior issue, arguing that the verdict was against the weight of the evidence.
¶ 28. Under the testimony presented in this case, we find that the circuit court was well within its discretion in admitting the gray shirt into evidence. Three officers testified that exhibit S-11 was the shirt that Jenkins was wearing when he was apprehended. According to the officers, exhibit S-11 was the shirt that was searched, and it was the shirt in which they found the cocaine and the marijuana. Furthermore, exhibit S-11 was the shirt that was taken from Jenkins's inmate bin at the jail and brought to trial.
¶ 29. Jenkins exercised his opportunity to cross-examine the witnesses as to their recollection of the shirt that Jenkins wore. He also brought up how common that type of shirt could have been. Furthermore, Jenkins gave his account of the evening. He testified that he was wearing a tank top, but he also admitted that he had worn a gray shirt to a job interview earlier that day.
¶ 30. We find no error with the circuit court's decision to admit exhibit S-11 into evidence. There was credible testimony that Jenkins was wearing the shirt when he was arrested, that drugs were found in the pocket of the shirt, and that the shirt came out of Jenkins's inmate bin at the jail. This issue is without merit.

*214 IV. Whether the circuit court erred by sentencing Jenkins in absentia.
¶ 31. In his fourth point of error, Jenkins argues that there was no evidence or testimony that at the time of his sentencing hearing he had fled the custody of the Coahoma County Sheriff's Department. Jenkins concedes that it is not error to sentence a defendant who intentionally absents himself from a trial. However, Jenkins argues that because the State presented no evidence that he had intentionally absented himself from the hearing, it was a violation of his Fourteenth Amendment due process rights to sentence him in absentia.
¶ 32. Section 99-17-9 (Rev.2007) of the Mississippi Code Annotated provides as follows:
In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.
Furthermore, the supreme court has noted that "it is proper to continue a trial where the defendant has fled after trial has commenced." Jefferson v. State, 807 So.2d 1222, 1227(¶ 17) (Miss.2002). The supreme court created an exception to allow for a defendant to be tried in absentia "based on willful, voluntary and deliberate actions by a defendant in avoiding trial...." Id. at (¶ 18); see also Ali v. State, 928 So.2d 237, 239(¶ 8) (Miss.Ct.App.2006).
¶ 33. This Court has previously found that it was proper for a circuit court to proceed with sentencing when a defendant intentionally absented herself from the proceeding. Carmichael v. State, 832 So.2d 568, 571-72 (¶¶ 13-16) (Miss.Ct.App. 2002). In Carmichael, this Court found that the defendant waived her right to be present at her sentencing hearing, notwithstanding her claim that she was unaware of the date of the hearing. Id.
¶ 34. In the present case, Jenkins was remanded to the custody of the sheriff's department to await sentencing. However, he escaped, and he was still unaccounted for at the time of his sentencing hearing. The State informed the circuit court of the situation, and the court took notice of the fact that it was aware of the circumstances surrounding Jenkins's escape. The circuit court noted that:
[T]he Court was advised by members of law enforcement, including members of the Coahoma County Sheriff's Department, that Mr. Jenkins ... had escaped the custody, and since such time, the Court has been presented and has signed various orders and search warrants with affidavits attached thereto as concerns efforts by law enforcement to locate and obtain custody of Mr. Jenkins.
The circuit court went on to state that it understood that "all those efforts at this time have been to no avail." Finally, it concluded that "Mr. Jenkins is not in custody but voluntarily left the custody of the sheriff's department, and as such, has voluntarily waived his right to be present for these proceedings."
¶ 35. Rule 1101(b)(3) of the Mississippi Rules of Evidence provides that the rules of evidence do not apply to sentencing hearings. See Randall v. State, 806 So.2d 185, 231-32 (¶ 131) (Miss.2001). This Court has similarly found that the rules of *215 evidence are inapplicable to sentencing. See Strohm v. State, 845 So.2d 691, 700(¶ 30) (Miss.Ct.App.2003); Armstrong v. State, 828 So.2d 239, 246 (¶¶ 25-26) (Miss.Ct.App.2002).
¶ 36. The defense was allowed to put on any evidence that it had to refute the State's claim, but the defense presented nothing. Actually, defense counsel admitted to the circuit court that he had not had contact with Jenkins since the court entered its judgment, and he was unaware of Jenkins's location at the time of the sentencing hearing. We find no error with the circuit court taking judicial notice of its own records and knowledge of Jenkins's escape. This issue is without merit.

V. Whether Jenkins's sentence to life in prison as a habitual offender constitutes cruel and unusual punishment.
¶ 37. Next, Jenkins argues that he should not have received a life sentence as a habitual offender without the possibility of probation or parole for possession of such a small amount of cocaine. He says, "[i]t seems as if the trial court was unfairly harsh on Jenkins because it believed Jenkins had fled custody, and because he was not convicted by the jury of possessing the larger amounts of drugs found in the house." Jenkins requests this Court to conduct a proportionality review of his sentence and find that life without parole is disproportionate in light of his conviction for possession of a small amount of cocaine.
¶ 38. The requirements to impose a sentence as a habitual offender are set forth in Mississippi Code Annotated section 99-19-83 (Rev.2007). The statute provides as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-83.
¶ 39. Sentencing is within the circuit court's discretion, and this Court will not disturb a sentence if it is within the statutory limits. Wall v. State, 718 So.2d 1107, 1114(¶ 29) (Miss.1998) (quoting Hoops v. State, 681 So.2d 521, 537 (Miss. 1996)).
¶ 40. In his argument, Jenkins cites Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in which the United States Supreme Court established a review consisting of three factors to be used to determine if a sentence is appropriate to a conviction. The three factors are "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. However, Solem was overruled by Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which held that the Eighth Amendment does not contain a proportionality guarantee.
¶ 41. In addressing this issue following Harmelin, this Court stated, "In light of Harmelin, it appears that Solem is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Kelly v. State, 947 So.2d *216 1002, 1004(¶ 5) (Miss.Ct.App.2006) (quoting Hoops, 681 So.2d at 538). Our supreme court relied on a similar analysis to affirm the sentence of a defendant who was convicted of possession of less than a kilogram but more than an ounce of marijuana. Wall, 718 So.2d at 1114-15 (¶¶ 29-30). The supreme court upheld Wall's sentence because a threshold comparison of the sentence to the crime did not reflect that the sentence was grossly disproportionate. Id. at (¶ 30). Wall had been convicted of two prior felonies, one of which was classified as a violent crime. Id.
¶ 42. Also similar to the present case is Oby v. State, 827 So.2d 731, 734(¶ 7) (Miss. Ct.App.2002), in which the appellant argued that his life sentence without parole as a habitual offender was grossly disproportionate to his conviction of possession of 0.55 gram of cocaine. In Oby, we noted that "[t]he correct proportionality analysis for a habitual offender sentence does not consider the present offense alone, but within the habitual offender statute." Id. at 735(¶ 12) (citing Bell v. State, 769 So.2d 247, 251(¶ 9) (Miss.Ct.App.2000)).
¶ 43. Jenkins cites the case of Clowers v. State, 522 So.2d 762, 764-65 (Miss.1988) in support of his position. In Clowers, the supreme court affirmed the sentence imposed by the trial court when the judge found that the maximum sentence of fifteen years without parole under the habitual offender statute was disproportionate to Clowers's conviction of forgery. Id. at 763. However, as this Court has previously stated, Clowers is "not the rule but the exception." Oby, 827 So.2d at 734(¶ 9) (quoting Bell, 769 So.2d at 252(¶ 12)).
¶ 44. The present case is distinguishable from Clowers. Jenkins was not convicted of forging a $250 check, but of possession of cocaine. He was also convicted of possessing marijuana. He met the statutory requirements under section 99-19-83 in that he previously had been convicted of two felonies, one of which being robbery, a crime of violence. Each crime arose from a separate incident, and he served more than a year for each of them.
¶ 45. In reviewing Jenkins's sentence, we must consider not only Jenkins's current conviction for possession of cocaine, but also his prior convictions for robbery and for possession of a firearm by a felon. In light of the holdings in Wall and Oby, we do not find Jenkins's sentence to life without probation or parole as a habitual offender to be grossly disproportionate. Jenkins was convicted of possession of cocaine and two separate prior felonies. One of the felonies was a violent crime, and he served more than a year for each. His sentence conforms to the requirements of the habitual offender statute; therefore, we find this issue to be without merit.

VI. Whether it was error to give a jury instruction with examples of direct and circumstantial evidence.
¶ 46. Lastly, Jenkins argues that the circuit court improperly instructed the jury. He claims that jury instruction C-11[2] was an abstract circumstantial evidence instruction, which he believes misled the jury.
¶ 47. Our standard of review regarding the grant or denial of jury instructions is as follows:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions *217 given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Byrom v. State, 863 So.2d 836, 874 (¶ 129) (Miss.2003) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 48. Jury instruction C-11, of which Jenkins complains, reads as follows:
Ladies and Gentlemen of the jury, some of you may have heard the terms "direct evidence" and "circumstantial evidence[.]"
The court instructs the jury that "direct evidence" is direct proof of a fact, such as testimony by a witness about what that witness personally saw, heard, or did. "Direct evidence" is the testimony of someone who claims to have actual knowledge of a fact or who claims to have personal knowledge of the commission of the crime which has been charged. "Direct evidence" is simply evidence which, if you believe it, directly proves a fact. An example is if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.
The court instructs you that "circumstantial evidence" is proof of a fact or facts from which you could conclude, by your reason and common sense, that another fact exists, even [though] it has not been proven directly. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. "Circumstantial evidence" is simply a chain of circumstances that indirectly proves a fact. An example is if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.
The law makes no distinction between the weight to be given either direct or circumstantial evidence. You, as the jury[,] should decide how much weight to give any evidence.
¶ 49. Jenkins argues that granting the instruction was reversible error because it was an abstract instruction that misled the jury. Kitchens v. State, 300 So.2d 922, 925 (Miss.1974). We disagree. An abstract instruction does not require reversal unless it is reasonably apparent that the jury has been misled. Id. Jenkins has shown us nothing to indicate the jury was in any way misled by instruction C-11.
¶ 50. In addition to C-11, the circuit court gave proper instructions on the elements of the crimes for which Jenkins was charged. The circuit court instructed the jury to consider all of the instructions as a whole and to not single out any one instruction. Reading the instructions as a whole, we find that they properly instructed the jury as to the applicable law.
¶ 51. Furthermore, even though Jenkins complains about the instruction, the jury decided the issue of the circumstantial evidence in Jenkins's favor. The jury did not return a guilty verdict for the greater charge of possession of more than two grams but less than ten grams of cocaine, which was the only charge that required the jury to consider circumstantial evidence. We find no error with the given jury instructions, and we find no merit to this issue.
¶ 52. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, POSSESSION OF MORE THAN 0.1 GRAM BUT LESS THAN TWO GRAMS OF COCAINE, AND SENTENCE OF LIFE IN PRISON AS A *218 HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE, AND COUNT II, POSSESSION OF THIRTY GRAMS OR LESS OF MARIJUANA, AND TO PAY A FINE OF $250, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Officer Hite's first name is not contained in the record.
[2] The instruction complained of was originally State's instruction S-6, which the circuit court renamed instruction C-11.